[No. 27472. Department One. September 29, 1939.]

ALICE WARNER, *a Minor, by E. C. Warner, her Guardian ad Litem, Respondent,* E. C. WARNER, *Individually, Cross-appellant,* v. GORDON J. KEEBLER *et al., Appellants.*[1]

[1]Reported in 94 P. (2d) 175.

*Ballinger, Clark, Mathewson & Force,* for appellants.

*Ballinger, Hutson & Boldt,* for respondent and cross-appellant.

JEFFERS, J.—This action was brought by Alice Warner, a minor, by her guardian *ad litem,* E. C. Warner, and E. C. Warner, individually, against Gordon J. Keebler and Dorothy Keebler, his wife, to recover damages for personal injuries received by plaintiffs, and also for damages to the automobile of E. C. Warner, as the result of a collision between a car driven by plaintiff E. C. Warner, in which his daughter Alice was riding, and a truck driven by defendant Gordon J.

Keebler, in which his wife Dorothy was riding. The accident occurred at the intersection of south One Hundred Twentieth street and Roseburg avenue south, in King county, Washington.

The cause was tried to the court without a jury. The court entered findings, conclusions, and judgment in favor of plaintiff Alice Warner against defendants, and denied plaintiff E. C. Warner, individually, any recovery. The court also denied defendants recovery on their cross-complaint for personal injuries received and damage to their truck.

Motions for judgment notwithstanding the oral decision of the court, or in the alternative for new trial, were timely made by defendants and by plaintiff E. C. Warner, individually, and denied.

Defendants have appealed from the judgment entered, and plaintiff E. C. Warner, individually, has appealed from that part of the judgment denying him relief.

Roseburg avenue south and south One Hundred Twentieth street are gravel surfaced public highways in King county, Washington, neither street being an arterial highway. Roseburg avenue runs in a general northerly and southerly direction, and One Hundred Twentieth street runs in an easterly and westerly direction.

Just prior to the accident, as appears by the testimony of appellant Gordon Keebler, he was proceeding north on Roseburg avenue at about eighteen miles per hour in his Ford truck. For about one hundred feet south of the intersection, the road was rough, and he slowed down to about fifteen miles per hour. At all times, he was driving on his right-hand side of the road. He did not look to the right for approaching traffic on One Hundred Twentieth street, and did not see the Warner car until just as he came into the

intersection, at which time he thought the Warner car was about one hundred feet east of the intersection. Appellant testified that he could not tell the speed of respondent's car, and, to use his own words, "I was giving the man the benefit of the doubt of a prudent speed." He further testified that he did not stop, although he could have stopped in ten or twelve feet, but kept right on into the intersection, thinking, as he said, that it was *more or less safe to drive across the intersection.* He was almost through the intersection when his truck was struck just back of the cab by the Warner car and was carried across the intersection to the north and west, and turned partly around.

On direct examination, Dorothy Keebler was asked the question: "Will you just explain in your own words how the accident happened?" to which she replied:

"There isn't really much we can explain, except that we were approaching the intersection and we saw the lights of this car approaching, and the next thing the accident was over with. That is about the only way I can describe it. We were approaching the intersection and saw the lights and were halfway across the street when the accident was over with."

This witness further testified that she thought the Warner car was seventy-five to one hundred feet away when they first saw it.

Respondent E. C. Warner testified that, just prior to the collision, he was proceeding west on One Hundred Twentieth street at about thirty to thirty-five miles per hour; that his daughter Alice, a minor of thirteen years, was riding with him; that he first saw appellants' truck when he was about sixty-five feet east of the intersection; that, when he saw appellants' truck, he slowed down, and that the Keebler truck

slowed down, or, as it looked to him, had come to a stop; that, by this time, he had reached the intersection, and thinking appellants' truck had slowed down or stopped to let him pass, he then turned his attention to the front, stepped on the gas, released his brakes, and all of a sudden appellants' truck was before him and it was too late to avoid the collision.

The traveled portion of One Hundred Twentieth street was about twenty-one feet wide where it entered the intersection, and about twenty-four feet wide including the part outside the traveled portion. Appellant Gordon Keebler further testified that, at the time he was struck, there was about ten or twelve feet back of his truck which was available for Warner to use, but that Warner did not vary his course, but came straight on until he struck appellants' truck.

The trial court found that, by reason of the combined and concurring negligence of respondent E. C. Warner and appellants, and as a proximate result thereof, the automobile of respondent E. C. Warner and the truck of appellants came into collision within the intersection, and by reason thereof, the injuries and damages to the various parties were incurred.

The trial court further found that the negligence of Gordon Keebler consisted of the following: Failing to keep a proper lookout for the approach of the Warner automobile, and failing to yield to the Warner automobile the right of way in and through the intersection, when the latter was on the right of appellants' truck and simultaneously approaching a given point within the intersection.

Appellants' assignments of error will be hereinafter referred to as they are discussed.

This case having been tried to the court, we are bound to accept the findings as verities, unless from the record it appears that they are contrary to

the clear preponderance of the evidence. *Pietro Paint Mfg. Co. v. Taylor*, 147 Wash. 158, 265 Pac. 155.

Appellants contend the court erred in denying them recovery against respondent E. C. Warner, and in holding that appellant Gordon Keebler was negligent, and that such negligence was one of the proximate causes of the accident.

■ It is apparent from the fact that the car collided in the intersection and the further fact that it does not appear that respondent's car was being so wrongfully and unlawfully operated as to deceive appellants, that the cars were simultaneously approaching a given point in the intersection. *Martin v. Hadenfeldt*, 157 Wash. 563, 289 Pac. 533. This being true, it follows that appellant Gordon Keebler was the disfavored driver. Rem. Rev. Stat., Vol. 7A, § 6360-88 [P. C. § 2696-846], provides:

"It shall be the duty of every operator of any vehicle on approaching public highway intersections to look out for and give right of way to vehicles on their right, simultaneously approaching a given point within the intersection, and whether such vehicle first enter and reach the intersection or not: *Provided,* This section shall not apply to operators on arterial public highways." Laws of 1937, chapter 189, p. 899, § 88.

While all rights of way are relative, the primary duty of avoiding accidents rests upon the driver on the left, which duty he must perform with reasonable regard to the maintenance of a fair margin of safety at all times. *Martin v. Hadenfeldt, supra.*

In *Roed v. Washington Laundry Co.*, 160 Wash. 166, 294 Pac. 1023, the plaintiff was driving his car north on Roed road, and on approaching the intersection with the Sunnydale road, he looked and saw the laundry truck approaching at a distance of about one hundred seventy-five feet. Plaintiff was driving at

about sixteen miles per hour. He speeded up his car a little, but was struck by the laundry truck at a point a few feet north of the center of the intersection. Plaintiff was the driver on the left, and we held that he was guilty of such negligence as to preclude a recovery, and that the case fell within the second paragraph of the principles announced in the *Hadenfeldt* case, and without the fourth.

In *Strouse v. Smith*, 166 Wash. 643, 8 P. (2d) 411, the driver of the car on the left testified that he did not look to the right for approaching cars until the front end of his car came into the intersection. In commenting on the testimony in the cited case, we stated:

"Respondent's testimony conclusively establishes the fact that, except for his contributory negligence in failing to comply with the statute above referred to, the injury would not have occurred. He did not, *when approaching* the public highway intersection, look out for and give right of way to the vehicle on his right. He does not claim to have looked to the right until the front end of his car came into the intersection. That he did not then comply with the statute requiring drivers to look out for vehicles on their right, is clear from his testimony that he did not see any vehicles when he looked to the right as his car entered the intersection. The mandate of the statute is not complied with by a mere perfunctory turn of the head. When the law requires a driver to look, it places upon that individual the duty of seeing and observing. Mr. Christoe, who was riding with respondent, looked to the right as the car entered the intersection, and saw the truck fifty or sixty feet away."

In the instant case, there was no traffic on the highways in question, and no reason which would require appellants to proceed through the intersection with undue haste. It does not appear from the testimony that respondent Warner was operating his car

unlawfully, and, as we read the testimony, there was nothing in the manner of the operation of the Warner car which should have, or did, deceive appellants. We think the fault undoubtedly lies in the fact that appellant Gordon Keebler did not take the time to look and determine, as he was required to do, the speed of the Warner car, or its distance from the intersection. In other words, as shown by his testimony, appellant took a chance that he had time to cross the intersection ahead of the Warner car. Appellant, in our opinion, did not use reasonable care, under the existing conditions, to maintain a reasonable margin of safety. See *Vance v. McCleary,* 168 Wash. 296, 11 P. (2d) 823; *McAllister v. Anderson,* 169 Wash. 14, 13 P. (2d) 36; *Sather v. Blodgett,* 169 Wash. 25, 13 P. (2d) 60.

We are of the opinion the trial court was right in holding that appellant Gordon Keebler was negligent; that such negligence was one of the proximate causes of the accident; and that, because of such negligence, appellants were not entitled to recover herein.

█ The truck was the property of the community composed of appellants Gordon Keebler and Dorothy, his wife, and at the time of the accident was being used for the benefit of the community. Under the situation here presented, the negligence of Gordon Keebler would defeat any recovery on the part of appellant Dorothy Keebler. *Ostheller v. Spokane & Inland Empire R. Co.,* 107 Wash. 678, 182 Pac. 630.

Appellants cite *Saad v. Langworthy,* 153 Wash. 598, 280 Pac. 74; *Martin v. Hadenfeldt, supra; Butzke v. Hendrickson,* 172 Wash. 302, 20 P. (2d) 7. The rule announced in the fourth paragraph of the principles laid down in the *Hadenfeldt* case is not applicable herein, nor are the other cases cited applicable on the facts.

 Appellants further contend that, even though it be assumed that appellants were negligent, the doctrine of last clear chance would apply. In *Leftridge v. Seattle*, 130 Wash. 541, 228 Pac. 302, we stated:

"Thus we have two different situations to which the last clear chance rule applies. In the one, the plaintiff's negligence may continue up to the time of the injury if the defendant *actually sees* the peril; in the second, the plaintiff's negligence must have terminated if the defendant did not actually see the peril, but by the exercise of reasonable care *should have seen* it."

If either branch of the last clear chance rule is applicable herein, it must be the first part, for the negligence of appellants occurred just prior to, and continued up to, the time of the accident. We do not think, under the facts in this case, the rule is applicable. There is no testimony which indicates that respondent E. C. Warner actually saw the peril of appellants until it was too late to avoid the collision.

 We shall next discuss the contention made by cross-appellant, before taking up appellants' further assignments of error relative to the judgment in favor of respondent Alice Warner.

The court found that the cars of cross-appellant and appellants were simultaneously approaching the intersection, and we are in accord with that finding. This would place cross-appellant in the position of the favored driver. The court, however, found and concluded that cross-appellant was negligent in failing to see and appreciate the approach of appellants' truck in time to avoid a collision. We have examined the testimony carefully, and are unable to agree with the trial court that the testimony herein will support a finding of negligence on the part of cross-appellant. It does not appear from the testimony that cross-appellant was traveling at an unlawful rate of speed,

or that he was in any manner violating the rules of the road. The undisputed testimony is to the effect that, when he saw appellants' truck, cross-appellant slowed down, and that he thought appellants had slowed down or stopped to let him pass; that, by this time, he had reached the intersection; that he then looked ahead, released his brakes, and proceeded into the intersection; and that he did not realize that appellants' truck had not stopped until it was right in front of him and it was too late to avoid the collision. This testimony of cross-appellant was not, in our opinion, met or overcome by appellants.

While we appreciate rights of way are relative, and the duty rests upon both drivers to avoid accidents at intersections, we think, under the testimony herein, cross-appellant used that care required of a driver in his position. There is no intimation in the record, as we read it, that the court did not believe the testimony of cross-appellant, but apparently concluded from the facts that cross-appellant was negligent. Appellants did not attempt to meet this testimony, other than by showing the force of the impact and claiming therefrom that cross-appellant must have been going at an unlawful rate of speed. The scene of the accident being outside an incorporated city, and neither highway being an arterial, cross-appellant was lawfully entitled to drive thirty-five miles per hour.

It is our opinion that cross-appellant did all that he was required to do. After looking and seeing appellants' truck, and watching it up to the time he came to the intersection, and determining in his own mind that it had stopped or slowed up to let him pass, he had a right to assume, as the favored driver, that appellants had accorded him the right of way, and proceed. *Breithaupt v. Martin,* 153 Wash. 192, 279 Pac. 568; *Sather v. Blodgett, supra.*

While the trial court denied cross-appellant recovery, he found that his car had been damaged in the sum of five hundred dollars, and that he had been damaged to the extent of two hundred fifty dollars for personal injuries received. The testimony supports this finding.

■ It is next contended that the court erred in holding that respondent Alice Warner was entitled to damages in the sum of fifteen hundred dollars. The trial court saw this young lady and had an opportunity of observing the effect of the injuries which she claimed to have received, and to some extent determine as to whether or not they would be permanent and would disfigure her. Doctor North testified that Alice Warner's nose was broken, that, as a result of the break, the nose was flatter than usual, and that there was a hypersensitive area on the left side of the nose and face; that, in his opinion, the condition was permanent; that this condition caused a twitching of the face at times, and that her breathing was not as free as it should be. Doctor W. C. Kintner's testimony was to the effect that he examined and treated Alice Warner for her injuries, except the broken nose; that, in addition to the broken nose, she had two lacerated fingers on her left hand and a lacerated hip wound; that, because of loss of tissue on the middle finger, a scar formed, which impaired the use of this finger—in other words, as stated by the doctor, there was a thirty-five degree loss of flexation; that this condition would be permanent, unless possibly removed by an operation. It also appears that respondent suffered considerable pain and from shock. While it appears that Miss Warner had suffered a broken nose once before, it also appears that no disfigurement resulted from the first break, and it does not

appear that the second break was in the same place as the former one.

Considering all the facts herein, we are not prepared to say that the trial court was not justified in awarding to respondent Alice Warner the sum of fifteen hundred dollars damages for the injuries received.

It is further contended by appellants that respondent and Alice Warner cannot recover herein against appellants, for the reason that the negligence of her father is imputed to her, upon the theory that respondents were, at the time of the accidents, engaged in a joint enterprise. The trial court found that respondent Alice Warner was not guilty of contributory negligence, and the evidence supports this finding. In view of the fact that we have held that E. C. Warner was not negligent, it becomes unnecessary to discuss the other questions raised by appellants. Clearly, we think respondent Alice Warner was entitled to recover against appellants.

The judgment is affirmed on appellants' appeal and reversed on cross-appeal of E. C. Warner, with directions to the trial court to set the judgment aside, in so far as cross-appellant is concerned, and enter findings of fact and conclusions of law in cross-appellant's favor, and judgment in favor of cross-appellant and against appellants in the sum of seven hundred fifty dollars.

BLAKE, C. J., MAIN, STEINERT, and ROBINSON, JJ., concur.