[No. 27929. Department Two.   September 25, 1940.]

DOROTHY EVANS *et al., Respondents and Cross-appellants,* v. RUDOLF HARTMANN *et al., Appellants.*[1]

[1]Reported in 105 P. (2d) 717.

*Clarence J. Coleman,* for appellants.

*C. W. Jordan,* for respondents and cross-appellants.

JEFFERS, J.—This action was instituted by Dorothy Evans and Orville Evans, her husband, against Rudolf Hartmann and wife, to recover wages from January 1, 1938, to March 8, 1939, claimed to have been earned by Dorothy Evans, as an apartment house employee, under the provisions of the minimum wage law for women (Rem. Rev. Stat., §§ 7623 to 7641 [P. C. §§ 3526 to 3547], both inclusive), particularly § 7638 [P. C. § 3544], which provides:

"If any employee shall receive less than the legal minimum wage, except as hereinbefore provided in section 7632, said employee shall be entitled to recover in a civil action the full amount of the legal minimum wage as herein provided for, together with costs and attorney's fees to be fixed by the court, notwithstanding any agreement to work for such lesser wage. In such action, however, the employer shall be credited with any wages which have been paid upon account;"

and order No. 36 of the industrial welfare committee of the department of labor and industries.

Defendants denied generally the allegations of the complaint, and alleged affirmatively that plaintiffs, at all times during the employment of Mrs. Evans, occupied an apartment of defendants, for which the agreed and reasonable rental value was thirty-five dollars per month, and a garage which was of the agreed and reasonable rental value of $2.50 per month. Defendants prayed that, in the event of a recovery by plaintiffs

herein, they be allowed to offset against any judgment received by plaintiffs the agreed and reasonable rental value of the apartment and garage.

The cause was tried to the court on July 5, 1939. After a motion for new trial had been made by defendants, and denied, the court made and entered findings of fact, conclusions of law, and judgment. The court found:

"That the defendants now are and at all times hereinafter mentioned were the owners and proprietors of the Cascadian hotel in the city of Everett, Washington, and plaintiff, Dorothy Evans, is a female over eighteen years of age and was employed in said apartment house as superintendent of maids' work, had the duty of collecting rents, renting apartments, taking care of complaints of tenants, and general office work in connection with the operation of said apartment house.

"That the minimum wage set by the industrial welfare committee of the state of Washington in pursuance of powers conferred upon said committee by the laws of the state of Washington, effective December 7, 1937, established a minimum wage for women for the work performed by plaintiff, Dorothy Evans, at $16.00 per week and said order also provided that rental charges for apartments occupied by said employee shall not exceed one-third of the minimum wage.

"That from January 1, 1938, to March 8th, 1939, plaintiff Dorothy Evans was employed by said defendants at said apartment house for a period of sixty-two weeks, out of which period said Dorothy Evans had a three weeks vacation making a total employment period of fifty-nine weeks. During all of said time plaintiff Dorothy Evans worked at least forty-eight hours per week, and said employment was continuous. That under the minimum wage order heretofore mentioned there became due and owing plaintiff Dorothy Evans, the sum of Nine Hundred Forty-four and no/100 ($944.00) Dollars."

The court further found that, during this period, Dorothy Evans was paid the sum of $159.02, and that

defendants were entitled to a credit of $5.33 a week for sixty-two weeks, as rent for the apartment occupied by plaintiffs, or $330.46; that after deducting the sums of $159.02 and $330.46, there was due and owing to plaintiff Dorothy Evans the sum of $454.52.

The court further found that plaintiffs, as husband and wife and as a marital community, occupied and used the apartment referred to, and that the reasonable rental for the occupancy of this apartment was the sum of forty dollars per month for a period of six months, and thirty-six dollars per month for a period of eight months and eight days, or a total sum of $537, less the sum of $330.46, leaving a balance of $206.54 due defendants from plaintiffs on account of the reasonable rental of such apartment.

Judgment was entered on the findings in favor of plaintiffs for $454.52, plus $100 attorney's fee and costs; and, as a counterclaim, defendants were given judgment against plaintiff Orville Evans and the community composed of plaintiffs, for $206.54.

Defendants have appealed from that part of the judgment adverse to them, and plaintiffs have cross-appealed from that part of the judgment adverse to them. Plaintiffs will hereinafter be referred to as respondents, and defendants as appellants.

Appellants make the following assignments of error: (1) The court erred in making and entering findings that Mrs. Evans' employment came within the purview of the minimum wage act; (2) in entering judgment in favor of respondents for alleged underpay; (3) in overruling appellants' motion for a new trial. Respondents assign error on the allowance by the court of a claim against the community for rental of the apartment in the sum of $206.54.

It should be kept in mind that, in considering the testimony, the case having been tried to the court,

we are bound to accept the findings as verities, unless from the record it appears that they are contrary to the clear preponderance of the evidence (*Warner v. Keebler,* 200 Wash. 608, 94 P. (2d) 175), and where the testimony is in conflict, the findings of the trial court will not be disturbed, unless we are satisfied that the evidence preponderates against them (*Gensman v. West Coast Power Co.,* 3 Wn. (2d) 404, 101 P. (2d) 316).

Respondent Dorothy Evans was a married woman, over the age of eighteen years, and was first employed at the Cascadian apartments by the First National Bank, the then owner, as a switchboard operator, at fifty dollars per month. At that time, respondents did not live in the apartment house. Appellants purchased the apartment house the latter part of April, or the first of May, and Mrs. Evans continued to work on the switchboard until about June 10, 1937, when the switchboard was discontinued.

It appears from the testimony of respondents that, about June 1, 1937, Mr. Johnson, who was the agent of appellants and manager of the Cascadian, asked Mrs. Evans to come and live in the apartment house, agreeing to pay her forty-five dollars per month, and in addition to furnish respondents an apartment then renting for thirty-five dollars per month. Under this arrangement, Mrs. Evans was to work in the office from one p. m. to nine p. m. each day, except Sunday. Respondents testified that Mr. Evans had nothing to do with the making of this agreement, and that there was no understanding that Mr. Evans was to do any work in or about the apartment house as part of the consideration for the agreement, but that the forty-five dollars per month and the use of the apartment were compensation for the services to be rendered by Mrs. Evans. On the other hand, Mr. Johnson testified

that it was a family arrangement, and that it was agreed that he would pay Mrs. Evans forty-five dollars and furnish respondents an apartment, and that, in addition to Mrs. Evans' services, Mr. Evans was to assist in the janitor work two nights a week. Respondents denied that any such agreement was made.

Under this agreement, Mrs. Evans superintended the maids' work, did some book work, such as typing reports made by Mr. Johnson, rented apartments, looked after the laundry of tenants, and took care of any complaints which might be made, but was required to do no work such as is usually done by maids. While on duty, Mrs. Evans was required to put in the time in the office. It appears that Mr. Evans did assist the janitor, although he testified this was not done because of any understanding with Mr. Johnson, but as an accommodation to Mr. Bender, the janitor, and also for the reason that Mr. Evans wanted to become familiar with the work, so that if a vacancy should occur, he would be in a position to fill it.

Mrs. Evans received a check each month for forty-five dollars, until January 1, 1938, and nothing was paid Mr. Evans for any services performed by him. Respondents testified that no different arrangement was made with Mr. Johnson relative to the employment of Mrs. Evans, or the compensation she was to receive after January 1, 1938, than had theretofore existed, although on January 1, 1938, Mr. Evans went to work for appellants as janitor as a full time employee, at union wages, and continued in such employment until March 8, 1939. Mr. Evans at all times received a check for his wages, and no deductions were made for any rent.

A Mrs. Bender was also employed by appellants in the apartments, and had been prior to January 1, 1938. Respondents testified that, beginning January 1, 1938,

it was agreed that Mrs. Evans would work the morning shift, which was from eight a. m. to one p. m., one ·week, and Mrs. Bender would work the afternoon shift, which was from four p. m. to ten p. m., and the following week they would change, Mrs. Bender taking the morning shift and Mrs. Evans the afternoon shift; and that, in order to make up the difference in hours, the one taking the afternoon shift would work all day Sunday. Mrs. Evans further testified that her work, after January 1, 1938, was practically the same as it had been before, except that she was not required to stay in the office all the time, but she had to stay in ·the apartment at all times while on duty, and do anything that might be required to be done; that, when not actually engaged in some duty, she could attend ·to her usual household duties; and that she did per-·form those duties.

Mr. Johnson, on the other hand, testified that it was ·agreed that, in consideration of Mr. Evans being put on as a full time employee, and in view of the fact that Mrs. Evans would not be required to stay in the office at all times, but could do her usual household duties, all Mrs. Evans was to receive for her work was ·the use of an apartment. Respondents deny that any such agreement was made, and deny that they knew of any change in the arrangement, in so far as Mrs. Evans' salary was concerned, until she failed to receive her check on the 15th of January, she having theretofore been paid on the fifteenth and the first of each ·month. Mrs. Evans testified that she did not say any-·thing to Mr. Johnson, because she was afraid·if she did, she and her husband might lose their jobs.

No wages were received by Mrs. Evans from January 1, 1938, to May, 1938, at which time there was apparently some trouble with the unions over Mrs. Evans and Mrs. Bender, and these ladies at that time

both joined the union. Mr. Johnson testified that, after the objection had been made by the union, it was agreed between appellants, the union, and respondents, that Mrs. Evans would be paid on a basis of thirty-seven and one-half cents an hour for six hours a day, six days a week; and that, in reaching this agreement, it was also agreed that the apartment was worth forty dollars a month, and that in addition, Mrs. Evans would receive sixteen dollars a month in cash. Mrs. Evans denied that she ever agreed to payment on a basis of six hours a day, six days a week, and testified that she had nothing to do with fixing the basis on which she was paid from May, 1938.

Mr. and Mrs. Bender, who testified for appellants, stated that, while Mr. Johnson, respondents and themselves talked about this matter, no definite agreement was ever reached.

From May, 1938, to January, 1939, Mrs. Evans received $159.02. At the time this suit was instituted, Mrs. Evans had received nothing from January 1, 1939, to March 8, 1939, at which latter date she ceased work.

It appears, from all the testimony, that, while Mrs. Evans was not required to actually put in more than three hours a day in the office and in the other work, she was on duty eight hours each day on the morning shift, and six hours a day and Sunday while on the afternoon shift, and that she was subject to call at any and all times while on duty, and could not leave the apartment.

Appellants state that the only question for determination on their appeal is whether the minimum wage law for women applies to the situation disclosed herein, contending that the act does not apply to Mrs. Evans, as she was not a full time employee, but devoted only a part of her time to the employment for which she is now seeking to recover. Appellants base their

contention upon the order of December 7, 1937, made by the industrial welfare commission, pursuant to authority granted by the minimum wage law, and upon our decision in the case of *Sparks v. Moritz*, 141 Wash. 417, 251 Pac. 583. The order above referred to provides:

"Section 1. Women and minor apartment house employees shall be paid not less than $16.00 per week for a full week's work.

"Women or minor apartment house employees employed for less than forty-eight hours during any one week shall be paid not less than thirty-seven and one-half (37½) cents per hour for work performed during that week.

"Section 2. When occupancy of an apartment is a compulsory condition of employment, the employer shall provide adequate living quarters including heat, light and water for the employed person.

"Said living quarters to include separate rooms for cooking, sleeping and toilet purposes.

"Rental charges for apartments shall not exceed one-third (⅓) of the minimum wage of $16.00 per week except as hereinafter provided."

While some statements may be found in the *Sparks* case, *supra,* which may seem to support appellants' contention, it is apparent from a reading of the cited case that all Mrs. Sparks alleged or attempted to prove, as a basis for her recovery of the minimum wage, was that she worked from February 1 to April 20, 1924, for a period of three hours a day; from April 20 to June 1, 1924, five hours per day for week days, and seven and one-half hours on Sundays; and from July, 1924, to April 1, 1925, she worked three hours a day on week days and four hours on Sunday. It further appears that Mrs. Sparks had contracted to operate the elevator for ten dollars per month. It does not appear in the cited case that Mrs. Sparks was employed for any specific number of hours per day, or that she

was expected to remain on duty at the elevator at all times. The opinion contains this statement:

"The trial court found that respondent operated the elevator, during the hours for which she was employed to operate it [naming the hours above mentioned]."

We held the employment of Mrs. Sparks was not such employment as came within the provisions of the minimum wage law and order. We are of the opinion the cited case is not controlling herein.

We may concede that an agreement which would not offend against the minimum wage law for women, and which could well be sustained under paragraph 2, § 1, of the order above referred to, might be made and entered into between an employer and an employee, whereby such employee, even though subject to call for eight hours a day, but not expected or required to actually perform any service for more than a certain number of hours each day and less than forty-eight hours a week, should receive thirty-seven and one-half cents an hour for such service for the time actually worked. However, we are of the opinion that paragraph 2, § 1, contemplates an employment such, for instance, as where a woman is hired to work for one, two, three, or a less number of hours than eight each day, and for a less number of hours than forty-eight each week, and where, after such services have been performed, the employee's time is her own and she thereafter owes no further duty to her employer. In other words, we believe the paragraph contemplates an intermittent, and not a full time, employment, such as the trial court found to exist in this case.

We are of the opinion it cannot be said that the trial court erred in failing to find that Mrs. Evans agreed to work for appellants on a basis of thirty-seven and one-half cents an hour, six hours a day and six days a week.

We are also of the opinion that the evidence does not

preponderate against the finding of the trial court that Mrs. Evans was employed by appellants on a basis of eight hours a day for six days a week, and that Mrs. Evans worked forty-eight hours a week for a period of fifty-nine weeks, from January 1, 1938, to March 8, 1939, for which she was entitled to the minimum wage of sixteen dollars per week, less the sum of $159.02 paid to her by appellants, and less the sum of $330.46, for rent.

We now come to the question raised by respondents' cross-appeal. Appellants were given judgment against respondent Orville Evans and the community composed of respondents, for the sum of $206.54, which sum was arrived at by deducting the $330.46 rent charged to Mrs. Evans from the sum of $537, which the trial court determined to be the reasonable rental value of the apartment occupied by respondents. It is difficult to determine upon what theory the trial court allowed this set-off in favor of appellants, in view of the testimony, and in view of § 3 of order No. 36, reference to §§ 1 and 2 of which has heretofore been made. Section 3 provides:

"Should women or minor apartment house employees desire larger apartments for the accommodation of additional members of their families, or should they desire to occupy more expensive apartments than employers are obligated to furnish in accordance with section 2, they may enter into appropriate contracts with employers to do so, said contracts to be *subject to the approval of the industrial welfare committee.*

"When occupancy of apartments is not a compulsory condition of employment and employees wish to occupy them of their own volition and accept the use of apartments in lieu of wages, they may enter into contracts to do so, said contracts to be subject to the approval of the industrial welfare committee.

"Employees whose occupancy of an apartment is a condition of employment but whose duties do not require eight hours work per day may enter into appro-

priate contracts with employers, said contracts to be subject to the approval of the industrial welfare committee." (Italics ours.)

It is admitted that no agreement relative to rent of the apartment was ever submitted to the industrial welfare committee. The trial court allowed appellants a credit equal to one-third of the minimum wage, as provided in § 2 of order No. 36, for the full sixty-two weeks the apartment was occupied by respondents.

In our opinion, there is no proof that Mr. Evans ever agreed to pay anything for this apartment, or that any demand was ever made upon him for payment of this rent, or any part of it; but to our minds, the evidence is conclusive that, even under appellants' theory, the rent for this apartment was to be part of the compensation of Mrs. Evans for her services. This being true, we are satisfied that appellants are not entitled to a credit for rent of more than one-third of Mrs. Evans' minimum salary, nor are they entitled to a judgment against Mr. Evans or the community for $206.54, or any other amount. To entitle appellants to more than one-third of such minimum wage, it must appear that the agreement so providing was submitted to and approved by the industrial welfare committee.

Appellants, to sustain their contention that respondent husband is liable herein, cite Rem. Rev. Stat., § 6906 [P. C. § 1431], which is to the effect that the expenses of the family and the education of the children are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately.

We are of the opinion that neither the above statute nor the cases of *Strom v. Toklas*, 78 Wash. 223, 138 Pac. 880, and *Jones, Rosquist, Killen Co. v. Nelson*, 98 Wash. 539, 167 Pac. 1130, cited by appellants, are applicable herein, for the reason that, in order to give

an employer the right, under the minimum wage law, to collect as rent more than one-third of the minimum wage, such agreement so to do must be submitted to and approved by the industrial welfare committee.

Appellants' motion for new trial was properly denied.

For the reasons herein assigned, the judgment of the trial court will be affirmed, in so far as it awarded judgment in favor of respondents in the sum of $454.52, plus $100 attorney's fee and costs, and reversed in so far as it allowed to appellants judgment against respondent Orville Evans and the community composed of Orville Evans and Dorothy Evans, his wife, in the sum of $206.54.

BLAKE, C. J., STEINERT, BEALS, and DRIVER, JJ., concur.