[No. 28217.  *En Banc.*  April 3, 1941.]

LOUISE WINSTON *et al., Appellants,* v. RAYMOND BACON, *Respondent.*[1]

[1]Reported in 111 P. (2d) 764.

*George F. Hannan* and *Charles H. Heighton,* for appellants.

*Ballinger, Hutson & Boldt,* for respondent.

STEINERT, J.—This action was instituted by plaintiff Louise Winston to recover damages for personal injuries sustained by her as the result of a collision between an automobile owned and operated by defendant and an automobile in which plaintiff was riding as a guest of the driver. Mattie Norman, another guest in the car in which plaintiff Winston was riding, was subsequently made a coplaintiff seeking damages for similar injuries sustained in the same collision. Tried to the court, sitting without a jury, the action resulted in findings of fact and conclusions of law in defendant's favor. Motions for judgment notwithstanding the decision of the court, for a new trial, and for reopening

of the case were denied. Judgment was entered on the findings, and plaintiffs appealed.

The collision occurred in the intersection of Fourteenth avenue and Alder street in the city of Seattle, at approximately 11:15 p. m. on July 22, 1939. Fourteenth avenue, in that vicinity, is thirty feet wide from curb to curb, and runs in a northerly and southerly direction; Alder street is approximately twenty-five feet wide from curb to curb, and runs in an easterly and westerly direction. The two streets, neither of which is an arterial, intersect at right angles. Fourteenth avenue approaches the intersection from the south on an upgrade of 7.8%. Alder street approaches the intersection from the west on an upgrade of 1.6%, and after crossing the intersection proceeds eastwardly on an upgrade of 8.4%.

The intersection itself is practically level, but is obstructed on all four corners. At the southeast corner, there is a vacant lot which is covered with a luxuriant growth of berry bushes seven feet high and extending partly onto the sidewalk. As a driver approaches the intersection from the south, his view of Alder street to the right is thus obstructed until he arrives approximately at the south margin of the intersection. On the southwest corner of the intersection, a house sits back ten or fifteen feet from the sidewalk. In addition, a three-foot hedge borders the property, at the sidewalk line, and a row of laurel bushes three or four feet high grows in the parking strip, along both Alder street and Fourteenth avenue. As a driver approaches the intersection from either the west or the south, his view to the south or to the west, alternately, is thus obstructed until he arrives at or near the west or south margin, respectively, of the intersection.

Upon all four approaches to the intersection, at a

distance of about one hundred feet from the corner, the city has posted reflector signs, reading, "Cross Traffic. Safe Speed 15 Miles." The maximum speed allowed, by statute, in traversing any intersection of public highways within incorporated cities and towns where the operator's view is obstructed, however, is twenty miles per hour, Rem. Rev. Stat., Vol. 7A, § 6360-64 [P. C. § 2696-891], and it is not contended herein that the statutory speed limit was affected by the posting of the signs. On the night of the collision, the weather was warm and the streets were dry.

Respondent was driving north on Fourteenth avenue in a 1933 Dodge coupe, and was accompanied by a friend, a fellow employee. At the same time, one Charles E. Johnson was driving east on Alder street in a 1928 Whippet coupe which he had purchased from a used car dealer about a week before. Accompanying Johnson, and sitting to his right in the coupe, were the two appellants herein. Respondent, being the driver on the right, was, under our statute, the favored driver. Rem. Rev. Stat., Vol. 7A, § 6360-88 [P. C. § 2696-846].

The Whippet coupe, driven by Johnson, entered the intersection and proceeded to cross. After it had reached a point near the southeast corner of the intersection, it was struck on the right rear wheel and fender, and, as a result of the impact, was whirled around and forced over to the north side of Alder street, coming to rest facing west, with its front end at about the inner line of the east sidewalk running north on Fourteenth avenue. Johnson escaped unhurt, but appellants received the injuries for which they seek to recover in this action.

The only eyewitnesses to the collision and the preceding events were the occupants of the two cars, and their testimony was in sharp conflict.

Respondent testified that, prior to the time of the collision, he had been driving at a speed of from twenty to twenty-five miles per hour, slowing down at the intersections; that, in the block south of Alder street, he was driving at a speed of about twenty-three miles per hour; that he kept a lookout as he drove along; that, before he reached the intersection, he glanced to his left but saw no lights or reflection of lights; that, as he entered the intersection, he slowed down to about twenty miles per hour, and, on account of the obstructed view at the southeast corner, was giving his attention primarily to the right in order to determine whether any traffic was approaching from that direction; that, when he arrived approximately at the south curb line, and after completing the necessary observation of conditions on his right, he looked to the left, and then for the first time saw the other car, which at that time was just entering the intersection and was about ten or fifteen feet distant from him; that he immediately applied his brakes with full force and swerved to the right in an effort to avoid a collision, but without avail; that he collided with the rear right side of the other car as it crossed his path along Fourteenth avenue, just north of the center line of Alder street; and that his car stopped about a foot or a foot and a half from the point of impact.

He further testified that the other car, when he first observed it, was proceeding along the center line of Alder street at a speed which he estimated at thirty miles per hour; that only one of its headlights was burning, and that the one light that was burning threw practically no beam; and that the other car, from the time that he first saw it until the moment of the impact, did not alter its course or slow down. Respondent's testimony was corroborated by that of his companion, except that the latter was under the impression

that respondent had swerved to his left, rather than to his right, to avoid the collision, and that the two cars came together at about the center, or slightly west of the center, of the intersection.

On the other hand, Johnson, driver of the car in which appellants were riding, testified as follows: Just prior to the time of the collision, he was traveling east along Alder street at a speed of twenty-five miles per hour, which was about the maximum speed of which his car was capable. As he reached Fourteenth avenue, he slowed down, coming almost to a stop, and shifted into second gear. He looked to his right at the time that he first entered the intersection, but saw no car approaching. When he was about ten feet within the intersection, he again looked to his right, and then for the first time saw the lights of an approaching car about one hundred and fifty feet south of the intersection. He was at that time traveling at a speed of ten or twelve miles per hour, and concluded that he had plenty of time to cross. He continued forward beyond the center line of Fourteenth avenue, and had gotten partly out of the intersection, near the southeast corner thereof, with the front end of his car almost to the east sidewalk, when the Dodge coupe coming from his right struck the rear right side of his car with such violence as to whirl it around twice and force it over to the north side of Alder street, where it came to a stop facing in a westerly direction. Johnson also testified positively that, prior to the collision, his lights were in good condition, and that both were burning. Upon cross-examination, he admitted that his car was dark, and mud-spattered from use, and that only one light was burning after the collision. The testimony given by appellants themselves was in accord with that given by Johnson.

A disinterested witness, who appeared upon the

scene shortly after the accident, testified that skid-marks, eleven or twelve feet long, were left upon Fourteenth avenue by respondent's car. During the course of the trial, the court visited the scene of the accident, and observed the surrounding conditions.

At the conclusion of the evidence, the cause was taken under advisement, and the court subsequently filed a lengthy memorandum decision, in which the testimony in the case and the authorities upon the subject were analyzed, and in which the conclusion was reached that a judgment of dismissal of appellants' case should be entered. Thereafter, appellants interposed the motions above referred to, and, after argument thereon, the court filed a memorandum opinion indicating that the motions should each be denied.

Formal findings of fact were then made in which the court found that the accident occurred within the intersection, near the southeast corner thereof; that, at the time of the occurrence, respondent was driving his automobile in a careful and prudent manner, and at a lawful and proper rate of speed; that the collision and the resulting injuries to appellants were caused solely, proximately, and directly by the negligence of Johnson in his operation of the car in which appellants were riding; and that his negligence consisted (1) in failing to keep a proper lookout for other traffic, particularly respondent's automobile, (2) in failing to yield the right of way to respondent, and (3) in failing to slow down, stop, or otherwise maneuver his automobile so as to avoid the collision.

The only question involved in the case is, as appellants assert, whether or not the collision was proximately caused by negligence on the part of respondent. Appellants' right to recover is dependent solely upon whether or not respondent was negligent, because, even though Johnson himself may have been

guilty of negligence, appellants were not in a position to exercise any authority or control over their host, and, hence, his negligence would not be imputable to them. *Allen v. Walla Walla Valley R. Co.,* 96 Wash. 397, 165 Pac. 99; *Dodge v. Salinger,* 126 Wash. 237, 217 Pac. 1014.

As already stated, the trial court specifically found that respondent was not guilty of any negligence. Such a finding will not be disturbed, of course, unless it appears from the record that the evidence clearly preponderates against it. *Warner v. Keebler,* 200 Wash. 608, 94 P. (2d) 175; *Gensman v. West Coast Power Co.,* 3 Wn. (2d) 404, 101 P. (2d) 316; *Evans v. Hartmann,* 5 Wn. (2d) 434, 105 P. (2d) 717. The question before us is thus narrowed down to whether or not the evidence preponderates against the trial court's finding of no negligence on the part of respondent.

Appellants insist that respondent was negligent in that he allegedly kept no lookout for cross traffic, failed to veer to his left, failed to have his car under proper control, and drove his car into the intersection at an excessive rate of speed.

It will be recalled that respondent testified affirmatively that he kept a lookout as he approached the intersection, that he did not see Johnson's car sooner because he was looking primarily to his right on account of the obstructed view in that direction, and that Johnson's car had but one light, which light shed no beam ahead. Appellants rely, as they necessarily must, on the physical facts to support their claim that respondent kept no lookout, was negligent in failing to veer to the left, and did not have his car under control. The physical facts are not sufficient, however, to overthrow the court's findings as to those matters. The fact that respondent did not see the Johnson car sooner

than he did is clearly insufficient, in itself, to establish negligence on respondent's part. Both he and his companion testified that there was no indication of the approach of the other car. The intersection was an obstructed one, more so to respondent's right than to his left. It was necessary that respondent, on approaching the intersection, look "primarily to his right," as he testified that he did, in order to comply with Rem. Rev. Stat., Vol. 7A, § 6360-88, which provides:

"It shall be the duty of every operator of any vehicle on approaching public highway intersections to look out for and give right of way to vehicles on their right, simultaneously approaching a given point within the intersection, and whether such vehicle first enter and reach the intersection or not. . . ."

The question of whether or not respondent kept a proper lookout was, at least, a question for the trier of the fact, and we are unable to say that the preponderance of the evidence upon that phase of the case is against the decision of the trial court.

That respondent did not veer to his left a distance sufficient to avoid the collision, is also inconclusive. Under the facts as found by the trial court, respondent was confronted with an emergency not of his own creation, and, accordingly, respondent cannot be held to the exercise "of the same degree of care to which he would be held if time were allowed within which to deliberate and choose the safest course." *Ritter v. Johnson*, 163 Wash. 153, 300 Pac. 518, 79 A. L. R. 1270; *Hook v. Kirby*, 175 Wash. 352, 27 P. (2d) 567; *Nystuen v. Spokane County*, 194 Wash. 312, 77 P. (2d) 1002; *American Products Co. v. Villwock*, 7 Wn. (2d) 246, 109 P. (2d) 570.

The situation presented by this case differs materially from that involved in *Geitzenauer v. Johnson*,

161 Wash. 444, 297 Pac. 174, relied upon by appellants, wherein the favored driver, who ran into the car of the driver on her left, was held guilty of negligence. In that case, the disfavored driver proceeded only eighteen inches past the center line of the intersection and came to a complete stop, and although the favored driver had a view of the disfavored driver when the latter was at least thirty-five feet distant from her, and although the favored driver also had a clear space of sixteen or seventeen feet to her right in which to pass safely, she struck the front six or eight inches of the other car. The facts there clearly justified the conclusion that had the favored driver

". . . given even the slightest look at the path over which she was traveling, she must have seen respondent's [the disfavored driver's] car and have had ample opportunity to avoid the collision. All that was necessary for her to do, was to swerve one foot to the right and she could have easily avoided all injury. Her own carelessness, in failing to look, and in failing to take advantage of the ample space left her in which to pass, precludes recovery by her."

In the instant case, respondent had no such "ample opportunity" to avoid the collision. Johnson's car was not stopped, nor was it coming to a stop, when the collision occurred, but was moving directly across respondent's path, and was but ten or fifteen feet away when respondent first saw it.

The fact that it was respondent's car that ran into the car in which appellants were riding is likewise not in itself a controlling consideration. In *Warner v. Keebler*, 200 Wash. 608, 94 P. (2d) 175, the favored driver ran into a truck operated by the disfavored driver, striking the truck just back of the cab. The holding of the trial court that the favored driver was guilty of contributory negligence, was reversed, on

the ground that, under the circumstances there involved, the favored driver did all that he was required to do. If respondent, in this case, did all that he was required to do, as the trial court apparently found, the mere fact that his car ran into the other car would not be sufficient to establish liability on his part.

What we have already said likewise disposes of the allegation that respondent did not have his car under control.

The remaining allegation, the one involving respondent's speed, raises the point most strenuously argued by appellants. Respondent and his companion had testified that respondent entered the intersection at a speed of about twenty miles per hour. The only other direct testimony in the record on that point was the testimony of appellant Norman that respondent's car "was coming awfully fast." To establish the alleged excessiveness of respondent's speed, appellants again rely upon the physical facts.

Their argument, which is embodied in a certain communication to which more specific reference will be made later, may be summarized as follows: At the moment of the impact, two forces were operating on Johnson's car, its own momentum, driving it toward the east, and the force of the impact, driving it toward the north. Inasmuch as the car took a diagonal course, the force of the impact must have been far greater than that of the car's own momentum, for the reason that the car had to overcome considerable friction in moving sideways to the north side of Alder street. It is then said that

" . . . when two almost perfectly elastic bodies, of equal weight hit, when one is standing still, the moving body will come to a dead stop and the struck body will move off at practically the speed of the body that hit it. For example a billiard ball hitting another ball squarely will come to a dead stop and all its mo-

mentum will be imparted to the ball that was struck. Automobiles are not highly elastic bodies, and in a case of this kind a very considerable fraction of the momentum of car B [respondent's car] was absorbed when it crushed into the side of car A [Johnson's car]."

The argument then continues: The force of the impact was sufficient, also, to turn Johnson's car completely around. In addition, the skid-marks indicate that the full braking power of respondent's automobile had been applied approximately ten feet before the point of impact. Despite the material reduction in speed and despite the absorption of an indeterminate amount of momentum when the cars crashed to a solid contact, there was sufficient force remaining in respondent's automobile to impart to Johnson's car a momentum so much in excess of that which it had in traveling east that, overcoming side friction in addition, it was whirled around and sent in a diagonal direction, after which respondent's car still had enough momentum to enable it to proceed, with its brakes still set, one or two feet beyond the point of impact. Those facts, it is insisted, prove conclusively that respondent was traveling more than twice as fast as was Johnson, so that, since Johnson was traveling at a speed of ten to twelve miles per hour, respondent must have been driving in excess of twenty miles per hour, the maximum speed permitted at obstructed intersections within city limits.

The technical nature of that argument is obvious. As appellants' counsel himself states, the problem is one in physics. While that problem may have been a proper subject for expert testimony, the difficulty here is that there is no such testimony in the record. In the absence of such testimony, we do not feel qualified to express any opinion upon the validity of the argument advanced. The existence and the ap-

plication of the particular physical laws suggested by appellants are not so generally known and so commonly accepted as to constitute them a subject for judicial notice.

After the trial court had rendered its memorandum decision, an attempt was made to get the effect of expert testimony into the record. Counsel for appellants wrote to the research, or scientific, institute maintained by the publishers of a certain encyclopedia, and propounded a hypothetical question involving facts similar to those involved in the case at bar, except that counsel gave the weight of the two cars, whereas there was no evidence in the record on that point, and, upon the basis of the information supplied by him, requested an opinion as to the speed of the car coming from the right. The answer to counsel's communication was that

" . . . it is fair to estimate that car B [the one on the right] was going at a rate of speed more than twice that of car A [the one on the left] when the driver of car B discovered car A in his path, . . ."

the answer being based on the reasoning already herein set forth.

On the basis of that communication, appellants moved for judgment notwithstanding the decision or, in the alternative, for a new trial, or for the reopening of the case. In support of the motion last mentioned, counsel filed an affidavit setting forth his correspondence with the research institute and his intention of subpoenaing the appropriate member of its scientific staff, and certain other witnesses. The motions were denied, the court saying with specific reference to the motion to reopen the case:

"The court commends counsel for his diligence in connection with this matter but can find no legal justification for reopening the case on the ground relied upon. Newly discovered evidence is one of the grounds for granting a motion for new trial, but counsel does

not rely upon this ground. There must be an end to litigation, and if the procedure herein were followed this desideratum could not be attained. The motion to reopen is denied."

The trial court's position must be sustained. Appellants rely upon the case of *Dietz v. Bartell,* 120 Wash. 443, 207 Pac. 663, wherein it was held that the trial court erred in denying a motion to reopen, which motion was made prior to judgment and for the purpose of supplying some purely formal testimony. That case is not in point.

We are not here concerned with any purely formal testimony. The proffered evidence goes to the very heart of the controversy, and, if the case were reopened to admit it, a battle of experts would undoubtedly be precipitated, and hypothetical questions and technical responses would swell the record to almost unrecognizable proportions. The attempt to produce this evidence was made after the rendition of the memorandum decision, in order to eliminate the weaknesses in appellants' proof which had been pointed out by the court. The vice in such a procedure is obvious, and the trial court's remarks were apt. The reopening of the case was within the trial court's discretion. *Field v. Field,* 163 Wash. 115, 300 Pac. 532; *Seattle v. Pacific States Lumber Co.,* 166 Wash. 517, 7 P. (2d) 967. That the trial court carefully considered the matter is indicated by the memorandum opinion written with reference to the motions. There was no abuse of discretion, and the action of the trial court must stand.

In this connection, appellants make much of the statement in the trial court's memorandum decision that if respondent's car had been traveling at an excessive speed "it would not have remained practically stationary at the point of contact." For the reasons already indicated, the statement in question is alleged

to be in contradiction of physical laws. However, not only is that contention answered by what has already been said, but, also, it is apparent from the record that the statement in question was not a basis of the trial court's decision. It appears as a passing statement in the next to the last paragraph of an eighteen-page memorandum decision. After the decision was rendered, the alleged inaccuracy was pointed out to the trial court in the argument on appellants' several motions, and the court, after due deliberation, adhered to its original view by making findings exonerating respondent from the charge of negligence.

■ Finally, appellants argue that the record and the court's findings indicate that the testimony offered by appellants was reasonable and reliable, while that offered by respondent and his companion was not. While it is true that some of the details given by the respondent in his testimony were not in accord with the court's ultimate findings, it does not follow therefrom that respondent's testimony was entirely unreliable, and that appellants' version of the accident was, conversely, entirely correct. On the contrary, the trial court, in its memorandum decision, specifically pointed out the unreasonableness of a certain phase of appellants' testimony bearing upon the principal issue in the case. It will be recalled that, according to the testimony of Johnson and of appellant Norman, respondent's car was approximately one hundred and fifty feet south of the intersection at the time that Johnson's car was ten feet therein and traveling at a speed of ten to twelve miles an hour. At that rate of speed, it would have taken Johnson just a little over one second to traverse the remaining twenty feet of the intersection. In order for respondent to have traveled one hundred and fifty feet in the same time, he would have had to travel approximately one hundred miles an hour while

going up a grade of 7.8 per cent. We quote the trial court:

"In order to accomplish this feat, Bacon would have had to obtain a lightning speed in order to collide with the Johnson car while the latter was in Bacon's lane of traffic. It just couldn't have happened that way."

On the basis of the record, we cannot say that the evidence preponderates against the trial court's findings.

The judgment is affirmed.

ROBINSON, C. J., BEALS, SIMPSON, JEFFERS, and DRIVER, JJ., concur.

BLAKE, J. (dissenting)—As I view this decision, it relieves the favored driver from looking, before he enters an intersection, for vehicles approaching from his left. Heretofore, the rule has been that he must look at a point where he can see approaching vehicles, and that he must stop if he observes that the disfavored driver is not going to yield the right of way. *Geitzenauer v. Johnson,* 161 Wash. 444, 297 Pac. 174; *Stokoe v. Paulson,* 168 Wash. 1, 10 P. (2d) 247; *Butzke v. Hendrickson,* 172 Wash. 302, 20 P. (2d) 7; *Finical v. McDonald,* 185 Wash. 121, 52 P. (2d) 1250. "All rights of way are relative, and the duty to avoid accidents or collisions at street intersections rests upon both drivers." *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533. The favored driver will not be heard to say that he did not see that which was in plain sight. *Helliesen v. Seattle Electric Co.,* 56 Wash. 278, 105 Pac. 458; *Silverstein v. Adams,* 134 Wash. 430, 235 Pac. 784; *Chess v. Reynolds,* 189 Wash. 547, 66 P. (2d) 297.

As I view the facts, respondent could have seen the Johnson car when he said he looked and did not see it. Had he seen it, he, of course, could have avoided

the collision. Under the authorities above cited, he should not be heard to say that he did not see it.

Furthermore, I think the majority have given undue weight to the findings of the trial court, attributing a conclusiveness to them which the court has declined to accord the verdict of a jury upon facts hardly distinguishable. *Chess v. Reynolds, supra.*

Sustaining a judgment in favor of defendant, entered notwithstanding the verdict of the jury in favor of the plaintiff (the favored driver), the court there said:

"While appellant was the favored driver, the undisputed evidence clearly indicates that, while respondent's truck, which was a fairly large one, was in plain sight, *appellant did not see it until practically the instant of contact. Appellant testified that he looked towards his left, but if he looked and did not see what was there, he is responsible for what he should have seen.* Assuming respondent's negligence, we are satisfied that the trial court properly held that appellant was also guilty of negligence which bars his recovery in this action, and that the motion for judgment in respondent's favor notwithstanding the verdict was properly granted." (Italics mine.)

Believing that respondent was guilty of negligence which was a proximate cause of the collision, I dissent.

MAIN and MILLARD, JJ., concur with BLAKE, J.