[No. 30095. Department One. June 26, 1947.]

FRANK GILLARDE, *Respondent,* v. NORTHERN PACIFIC RAIL-
WAY COMPANY, *Defendant,* PATRICK J. ROCHE
*et al., Appellants.*[1]

*Tonkoff & Holst,* for appellants.

*D. V. & Lane Morthland,* for respondent.

ABEL, J.—Plaintiff is the owner of a produce company
in Springfield, Illinois. In July, 1944, he purchased a car-
load of apricots from defendants Patrick J. Roche and
Winifred O. Roche, a copartnership doing business as
W. E. Roche Fruit Company, and Aileene M. Roche, wife
of Patrick J. Roche. Patrick J. Roche will hereafter be re-
ferred to as though he were the sole defendant.

Shipment was to be made to plaintiff at Springfield,
Illinois, and the purchase was made f.o.b. Yakima. There
was no dispute in the testimony but that the fruit was
packed, prepared, and loaded in the car in proper condition
for shipment. However, when it arrived at Springfield,

[1]Reported in 179 P. (2d) 235.

the temperature in the car was considerably higher than that outside the car, and the fruit was spoiled.

Plaintiff brought suit against defendant Roche and the Northern Pacific Railway Company, claiming that the damage to the fruit was directly and proximately due to negligence of the defendant railway company and its connecting carriers and/or the concurrent negligence of defendant Roche. The claimed negligence of the railroad company was based upon its failure to properly ice the car and to follow directions in the bill of lading, which called for shipment by standard refrigeration, with five per cent salt, to be provided by the carrier. The claimed negligence of defendant Roche was that he was careless and negligent in loading the apricots, in that he did not correctly paper and pack the car so that there would be proper circulation of air and refrigeration en route.

Defendant Roche denied any negligence and alleged that, if the shipment arrived in a deteriorated condition, it was due to improper refrigeration by the railroad company.

The defendant railway company claimed that it was not negligent, but that the damage to the fruit was caused by the negligence of Roche, as he had stapled heavy paper to the ends of the car and that it was allowed to extend down to the floor of the car, completely covering the lower vents in the ice bunkers and preventing the circulation of cold air from the bunkers through the car.

The trial court found that the damage to the fruit was caused by the negligence of defendant Roche, because he had improperly closed the lower vents from the ice bunkers into the car, and entered judgment against him.

Defendant Roche has appealed, claiming that the overwhelming weight of evidence is in his favor, and he bases this contention, first, upon his argument that the icing records of the railway company should not have been considered by the court as establishing the fact that the car was properly iced, for the reason that there was no testimony by anyone who actually put the ice in the car bunkers, and the only testimony on this point was from the

person who had charge of the icing records. Further, that, according to the icing records, if taken as true, more ice was put in the bunkers than they could hold, and one of the records does not disclose that any salt was added to the ice. His second claim is that, at the time the car was unloaded at its point of destination, it was inspected by agents of the delivering carrier, and, although they testified regarding the paper that was placed over the vents, they did not specifically cover the point of whether or not the vents below the false floor of the car were closed.

In discussing the facts, we are handicapped because the exhibits are not among the records and were never received by the clerk of this court, although they apparently were mailed by the clerk of the court at Yakima. However, we do have the statement of facts and an extensive and well-reasoned memorandum opinion by the trial judge.

In considering the first ground for appellant's claim that the trial court erred, we find that the railway company introduced in evidence what purported to be original icing records from the points where the car was claimed to have been iced, and the trial court found that the evidence showed that these were apparently daily records of the icing of all cars going through the icing stations, and showed the amount of ice placed in different cars on the days in question. The trial judge stated, in his memorandum opinion, that these records evidently had not been tampered with, and that there were no erasures or changes made in them.

Appellant argues that these records must be wrong because they show that there was a certain amount of ice in the bunkers when the car arrived at a given station, and that a certain amount was added, but that the total weight shows considerably more ice than the car bunkers would hold. Accordingly, appellant argues that these records must necessarily be incorrect and should not be accepted. We concede that appellant's position is not altogether unsound.

However, as opposed to this, we must consider the fact that the trial judge states, in his memorandum opinion, that these icing records had not been tampered with. They had all the appearance of being original records made at the time that the icing was performed. They were on sheets kept in the regular course of business and containing the icing records of numerous other cars being iced. They showed definitely that, as the car proceeded east, it used an increased quantity of ice, since these records indicate that the car used sixty-eight pounds an hour between Yakima and Spokane, while between Clinton and Springfield it used two hundred eighty-seven pounds an hour. When we consider all of these factors, we do not believe that it can be said that the icing records of the railroad company are wrong.

The second ground for claiming that the trial court erred is based upon the assertion that there was no competent evidence to prove that appellant Roche was negligent in covering the lower vents in the car.

Ice is placed in a refrigerated car in bunkers at each end. There is a grill at the top to permit warm air to pass from the car into the top of the bunker. There is a grill at the bottom, extending about eighteen inches up from the bottom of the car, which permits the cold air to pass out from the bottom of the bunker and into the car. As the ice melts, the cold air, being heavy, settles to the bottom and thus creates a circulation of air within the car. Due to the fact that some fruits, apricots in particular, will be frozen at each end of the car in the event the cold air comes directly on them, it is the accepted practice to put a false floor, on two by fours, on the bottom of the car and to cover the vents, from the false floor up, with paper. This permits the cold air to go under the false floor and circulate through the car. The practice is to tack a piece of heavy paper, the length of the end of the car and about thirty-six inches wide, to each end of the car, covering the vents, and then to bend it and let the lower half of the paper extend onto the top of the false floor. Of course, in the event that de-

fendant Roche completely covered the bottom vents of the bunkers, then the circulation of air would be entirely stopped, and this would necessarily cause the fruit to ripen and deteriorate before its arrival at the point of destination.

Defendant railway company produced three witnesses, who were employees of the delivering carrier, and who made an inspection of the car immediately after it was unloaded. They testified that they found nothing mechanically wrong with the car. One witness testified:

"This was a heavy type of cardboard paper and it went all the way to the floor of the car, which entirely closed the bottom vents up. However, it did not reach to the top vents. The top vents were open."

Later, he testified: "Q. How can you tell whether there was any circulation? A. The bottom vents were entirely covered up."

Another witness testified that the lower vents were covered with paper, and a third witness testified that the paper covered the lower vents from the bunkers into the car.

We are convinced, from reading the testimony of these witnesses, that they were testifying that the lower vents, below the false floor and into the bottom of the car, were covered; and we agree with the trial judge, who stated, in his memorandum opinion:

"The testimony of these three witnesses convinces the court that the preponderance of the evidence is to the effect that the lower vents were covered by paper not only at the time that the inspection was made and the car was washed out, but also while the car was carrying a load of apricots."

■ It is a rule of this court that we will not set aside the findings of the trial court where they are supported by the weight of the evidence. In the case of *Evans v. Hartmann*, 5 Wn. (2d) 434, 105 P. (2d) 717, the rule was stated as follows:

"It should be kept in mind that, in considering the testimony, the case having been tried to the court, we are bound to accept the findings as verities, unless from the

record it appears that they are contrary to the clear preponderance of the evidence (*Warner v. Keebler*, 200 Wash. 608, 94 P. (2d) 175), and where the testimony is in conflict, the findings of the trial court will not be disturbed, unless we are satisfied that the evidence preponderates against them (*Gensman v. West Coast Power Co.*, 3 Wn. (2d) 404, 101 P. (2d) 316)."

In *Davis v. Alexander*, 25 Wn. (2d) 458, 171 P. (2d) 167, we stated:

"It is a rule, which we have so consistently followed as to obviate the necessity of citation of sustaining authority, that, if there is evidence to support same, the trial court's findings will not be disturbed on appeal."

■ We believe that the trial court made a proper evaluation of the evidence, and the judgment is affirmed.

MILLARD, SIMPSON, and JEFFERS, JJ., concur.

MALLERY, C. J., dissents.