[No. 28322. Department One. July 14, 1941.]

JOHANNA M. OLSEN, *Respondent*, v. JOHN HAMRICK'S TACOMA THEATRES, *Appellant.*[1]

[1]Reported in 115 P. (2d) 718.

See 22 A. L. R. 610; 29 A. L. R. 29; 38 A. L. R. 357; 44 A. L. R. 203; 53 A. L. R. 855; 61 A. L. R. 1289; 26 R. C. L. 713 (8 Perm. Supp. 5797).

*Ryan, Askren & Mathewson* and *Meyer Horowitz,* for appellant.

*Earl V. Clifford,* for respondent.

STEINERT, J.—Plaintiff brought suit to recover damages for injuries sustained by her in consequence of stumbling and falling on a step inside the auditorium of a moving picture theater which was owned and operated by defendant. The action was tried to the court, without a jury, and resulted in findings, conclusions, and judgment in favor of plaintiff. Defendant appealed.

The evidence upon which the court based its findings is practically without dispute, and may be summarized as follows: On the evening of January 28, 1940, respondent, Johanna M. Olsen, a woman sixty-seven years of age, attended one of appellant's moving picture theaters in Tacoma. She was accompanied at the time by her two adult sons. After paying the price of admission, the party of three proceeded through the lobby of the theater and entered the main auditorium at its right center aisle. Being unable to find a place where they could all sit together, they sought separate seats. An usher thereupon conducted respondent to the rear row of seats on the right-hand side of the aisle, where the second seat from the aisle was found to be vacant.

The chairs in the rear row, with which row we are here particularly concerned, were each twenty-one inches in width, and were constructed upon a platform approximately thirty-six inches wide and elevated about eleven inches above the aisle floor. The backs of the chairs in the row just ahead slanted backwards somewhat, leaving a space of only about five and one-half inches between the front edges of the rear row of seats, when lowered for occupancy, and an imaginary vertical plane having its upper line coincident with the tops of the back rests of the chairs in the second row.

Access from the aisle to the platform upon which the rear row of seats stood was had by means of a short

stairway consisting of two steps, the first, or lower, step being at the edge of the aisle, and the second, or upper, step being level with, and forming a part of, the platform. The first, or lower, step had been constructed by cutting away a nine-inch strip from that portion of the platform which was underneath, and in front of, the seat nearest the aisle; that step is referred to, in the testimony, as the "cut-in" step. Thus, the twenty-one inch floor space in front of the first chair in the rear row was of irregular shape, and of unequal distance from the bottom of the seat. The inner twelve inches of that space formed a corresponding portion of the surface of the platform, and the remaining, or outer, nine inches composed the tread of the step adjoining the aisle.

The "cut-in" step was painted white, and was illuminated by two aisle lights shining directly upon it from underneath the first seat. The light was sufficient to attract the attention of one entering the back row, but to one making an exit therefrom sidewise, as one would be required to proceed on account of the limited space between the two rows, the light and the painted step underneath would be obscured if the seat nearest the aisle were occupied, particularly so if the occupant of that seat were a woman.

At the time that respondent entered the theater, the exhibition was in progress, and the auditorium was, of course, darkened. The usher who conducted respondent to the back row of seats indicated the location by means of a flashlight, and instructed respondent to "step up." Respondent entered the row as directed, and took the second seat from the aisle, the first seat being occupied by another woman.

From the description as heretofore given, it will be observed that the portion of the platform which constituted the floor space underneath and immediately in

front of respondent's chair, and for an additional distance of twelve inches to her left, was uniformly level and regular, but beyond that point, and in the vicinity of the aisle, there was a total, though divided, drop of about eleven inches, made by the "cut-in" step.

Although respondent had frequently attended various attractions at the theater, over a period of years, she had never before sat in the rear portion of the auditorium.

About fifteen or twenty minutes after respondent had taken the seat assigned to her, a patron sitting several rows forward vacated his place, and respondent, desiring to obtain a better view of the screen, arose with the intention of taking the vacated seat ahead. In making her exit from the rear row, she grasped hold of the top of the chair in front of her and moved sideways toward the aisle, as she was compelled to do in order to pass in front of the woman who was occupying the end seat.

Respondent was aware of the fact that she would have to step downwards, at some point, in order to get into the aisle, but was under the impression that the step down was at the edge of the aisle rather than at the place where it actually was, nine inches from the aisle. She could not see the painted step or the light reflected upon it, because of the woman who occupied the first seat. In her testimony, respondent stated several times: "The step came too fast for me. I looked for the step, but could not see it."

Reaching the edge of the "cut-in" step sooner than she expected, respondent stumbled and fell into and across the aisle, striking her head and left shoulder against the corresponding step on the opposite side, and sustaining the injuries for which this action was brought.

At the conclusion of the evidence, the trial judge,

upon appellant's request, viewed the premises in question and made a close examination of the seats, steps, and platform involved in the present controversy. In a memorandum opinion subsequently written, the trial court, after describing the conditions in detail, concluded that the "step-off" was dangerous in itself and that the owner was negligent in maintaining it.

Thereafter, the court made formal findings, of which we quote the two bearing specifically upon the principal issues presented at the trial and upon the main contentions advanced upon the appeal.

"V. That the step-off was deceptive in that it was at a place where a step would not be expected and while well lighted so as to attract the attention of one entering the back row, the painting and lighting were clearly insufficient to attract the attention of one who would naturally face the back of the seats in front and work past another patron seated or standing, as plaintiff [respondent] did; the light would be cut off when the seat at the step-off was occupied by a woman as the evidence shows it was in this case; a patron, such as the plaintiff, desiring to exit to the aisle from the back row would not anticipate the step-down before the end of the row and aisle was reached; the step-off was of unusual height for a busy theater; this step-off was dangerous in itself and the defendant [appellant] was negligent in maintaining it.

"VI. The plaintiff came in by the steps in question, and in leaving intended to step down at the end of the row of seats; however, the position of the cut in step-off was so deceptive that the plaintiff was not guilty of negligence contributing to her injury."

Upon appeal, appellant contends that the trial court erred in three respects: (1) In holding that appellant was negligent in the maintenance of the step in question; (2) in holding that respondent was not guilty of contributory negligence; and (3), in fixing the amount of the damages at twelve hundred dollars.

■ We preface our discussion of the assignments of error by referring to the well known rule that, in a case tried to the court, its findings of fact are to be accepted as verities, unless from the record it appears that they are contrary to the clear preponderance of the evidence. *Warner v. Keebler,* 200 Wash. 608, 94 P. (2d) 175; *Gensman v. West Coast Power Co.,* 3 Wn. (2d) 404, 101 P. (2d) 316; *Evans v. Hartmann,* 5 Wn. (2d) 434, 105 P. (2d) 717; *Winston v. Bacon,* 8 Wn. (2d) 216, 111 P. (2d) 764.

That rule is particularly applicable in a case where, as here, the trial court was not restricted to visualization of the premises from descriptions given by the witnesses, but, in addition, had the benefit of personal observation, examination, and test of the particular equipment while in normal use. *Judson v. Tide Water Lumber Co.,* 51 Wash. 164, 98 Pac. 377.

We now take up appellant's contentions in the order given, dealing first with the question of appellant's negligence.

■ It is a universally accepted rule that the proprietor of a place of public amusement, such as a theater, is required to exercise ordinary or reasonable care to put and maintain the premises, appliances, equipment, and devices which he devotes to such place of amusement in a reasonably safe condition for his patrons; and, if he fails to exercise such care, he may be held liable to the patron injured thereby. 62 C. J. 863, § 46; 26 R. C. L. 713, § 14; Notes (1923) 22 A. L. R. 610, 670; (1924) 29 A. L. R. 29, 33; (1935) 98 A. L. R. 557, 577. This court is in accord with that rule. *Hollenbaek v. Clemmer,* 66 Wash. 565, 119 Pac. 1114, 37 L. R. A. (N. S.) 698.

■ "Ordinary or reasonable care" is always a relative term, and no absolute test can be postulated for the government of each and every situation or condition

affecting every place of public amusement. 62 C. J. 867, § 53. The amount of care required in a given instance necessarily varies according to the circumstances of the particular case. *North Coast Power Co. v. Cowlitz, C. & C. R.,* 108 Wash. 591, 185 Pac. 615; *Hubbard v. Embassy Theatre Corp.,* 196 Wash. 155, 82 P. (2d) 153. "Ordinary or reasonable care" means that care which a reasonably prudent person would have exercised under the same or similar circumstances. *Scott v. Pacific Power & Light Co.,* 178 Wash. 647, 35 P. (2d) 749; *Chadwick v. Ek,* 1 Wn. (2d) 117, 95 P. (2d) 398.

A moving picture theater necessarily operates in partial darkness when pictures are being projected upon the screen. At the same time, patrons of the theater necessarily enter, leave, or move about while the entertainment is in progress. Although the operator of such a place of entertainment is not an insurer of the absolute safety of his patrons, he nevertheless must use reasonable care to see that the construction, equipment, management, and operation of the theater are reasonably safe for the patrons, having due regard both to the character of the entertainment and to the necessary conduct of those attending it. *Miller v. Poli's New England Theaters,* 125 Conn. 610, 7 Atl. (2d) 845, and cases therein cited.

Applying the foregoing rules and criteria to the factual situation presented by the evidence in this case, we are of the view that the trial court was fully warranted in finding that appellant was negligent in maintaining the step in the condition in which it did, and that such finding is not contrary to the clear preponderance of the evidence.

It is a known fact that the audience in such a place of amusement is constantly changing, and that, during the hours when the theater is crowded, and is darkened, people frequently and hurriedly change their

seats in order to get a better view. The difficulties attendant upon obtaining or leaving a seat located within a row that is partially filled are also commonly known. Imposed upon these well known facts, there is presented in this case a combination of somewhat peculiar and rather unusual conditions.

The stairway, consisting of two steps, was cut out of the platform upon which the row of seats rested, making a rise, or fall, of eleven inches, thus creating a possible trap for those who might not be fully aware of the exact location and height, or depth, of the steps. While one directly approaching and entering the row from the aisle would have his, or her, attention attracted by the color of the step or by the light reflected upon it from underneath the first seat, one making an exit from within the row would be presented with an entirely different situation, particularly so if the first seat were occupied by a person whose clothing overhung the entire width of the seat. Not only would the person making such exit ordinarily be facing toward the front of the theater rather than toward the row of chairs leading to the aisle, but both the painted step and the illumination would be obscured by the occupant of the end seat. If the seat next to the aisle had been eliminated and the lighting arrangement had been changed slightly, the conditions obviously would have been much improved.

In this connection, appellant cites and relies upon two cases: *Hollenbaek v. Clemmer,* 66 Wash. 565, 119 Pac. 1114, 37 L. R. A. (N. S.) 698, and *Givens v. De Soto Bldg. Co.,* 156 La. 377, 100 So. 534.

We have already cited the *Hollenbaek* case, *supra,* in support of the general rule regarding the duty of the proprietor of a theater to exercise reasonable care to make and keep his premises reasonably safe for his patrons. That case, however, though holding that,

under the circumstances, the defendant theater company was not negligent, is not controlling of the facts in this case, for the reason that there the step in question was not of the type or height, nor was it in the relative locality, of the step involved here, but was located in the main corridor of the theater, in plain view of those who were required to use it, was but seven inches high, and was illuminated by a brightly burning, unobstructed light.

The *Givens* case, *supra,* is likewise different from this case in certain material respects. The platform there was only eight inches above the floor level, and, more important, it does not appear that a portion of it had been cut away, as in the case at bar. Further, the jury in the *Givens* case visited the premises, saw the construction, and by its verdict found that it was not defective or dangerous to patrons. In this case, the trier of the facts, after observing the conditions, arrived at a different conclusion. The *Givens* case is not apposite here.

On the other hand, the following cases, which are analogous to this one in their factual situations, though severally differing, as may be expected, in some of the details, all held that, under the particular facts presented by the evidence, the question of the proprietor's negligence was one for the trier of the facts to determine: *Bass v. Southern Enterprises, Inc.,* 32 Ga. App. 399, 123 S. E. 753; *Central Amusement Co. v. Van Nostran,* 85 Ind. App. 476, 152 N. E. 183, 154 N. E. 390; *Magruder v. Columbia Amusement Co.,* 218 Ky. 761, 292 S. W. 341; *Oakley v. Richards,* 275 Mo. 266, 204 S. W. 505; *Bennetts v. Silver Bow Amusement Co.,* 65 Mont. 340, 211 Pac. 336; *Standard Theatres Corp. v. Hughes,* 185 Okla. 377, 91 P. (2d) 1058; *Smith v. Penn Federal Corp.,* 315 Pa. 20, 172 Atl. 147.

For the reasons previously given, we hold that the

evidence in this case was sufficient to warrant a finding of negligence on the part of appellant.

The second contention made by appellant is that respondent was guilty of contributory negligence. As hereinbefore stated, the trial court found that the position of the "cut-in step-off" was so deceptive that respondent could not, under the circumstances, be held guilty of negligence contributing to her injury.

What we have previously said with respect to appellant's first contention applies with equal, if not greater, force to the present contention. Under the evidence, it was a question for the trier of the facts to determine whether or not respondent was guilty of contributory negligence. For authority upon this point, we refer to, without repeating, the cases hereinabove cited. See, also, *Branch v. Klatt*, 173 Mich. 31, 138 N. W. 263.

In this connection, appellant relies upon, and quotes at some length from, the case of *Viles v. Thunborg*, 164 Wash. 190, 2 P. (2d) 666, wherein the plaintiff, while stepping down from a lavatory onto a darkened, or dimly lighted, hallway of a hotel, fell and was injured. She had entered the lavatory from the same hallway just a few minutes prior to her exit therefrom. She was held by this court to have been guilty of contributory negligence as a matter of law.

That case is distinguishable from this case, in that there, when the plaintiff, on making her exit, opened the lavatory door, the light from within shone into the hallway without, and the "fact that the lavatory floor was higher than the hallway floor was open, obvious and apparent to her." As stated in *Hayden v. Colville Valley Nat. Bank*, 180 Wash. 220, 39 P. (2d) 376,

"In that case [referring to the *Viles* case], as shown in the opinion, the undisputed facts show that there was a single step at the door or entrance of the lava-

tory in a hotel which plaintiff was visiting. *The step was not unusual, nor obscure, nor a blind, nor deceptive.*" (Italics ours.)

The facts in the case at bar present an altogether different situation, and from that factual distinction flows a different conclusion upon the issue of contributory negligence.

Appellant's final contention is that the amount of damages allowed by the trial court was excessive. Respondent sustained a two and one-half inch cut on the back of her head; bruises upon her back and left shoulder, the pain from which radiated around to the breast; a serious shock to her nervous system; an aggravation of a diseased condition of her heart; and, later, a severe attack of intestinal trouble. She was hospitalized for a week, required medical services and medicines, and was compelled to employ domestic help for a time. The pain in her shoulder has been more or less continuous since the date of the accident; she still complained of pain in her head at the time of the trial in October, 1940; and for a great part of the time since her fall she has been extremely nervous.

It is always, of course, a difficult problem to measure injuries in terms of dollars and cents. A fair and just approximation is all that can be expected. We are wholly unable to say that the evidence upon that issue preponderates against the finding of the court, or that the amount allowed was excessive.

The judgment is affirmed.

Robinson, C. J., Main, Blake, and Driver, JJ., concur.