88 N.J. Super. 153 (1965)
211 A.2d 214
BARBARA ANN SAVOIA, AN INFANT, BY HER GUARDIAN AD LITEM, PATRICK SAVOIA, AND PATRICK SAVOIA AND HELEN SAVOIA, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS,
v.
F.W. WOOLWORTH CO., A NEW YORK CORPORATION LICENSED TO DO BUSINESS IN THE STATE OF NEW JERSEY, AUTOMATIC CONCESSION CORP., A CORPORATION OF NEW YORK, AND KIDDIELANE CORP., A CORPORATION OF THE STATE OF NEW YORK, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 7, 1964.
Decided June 10, 1965.
*156 Before Judges GOLDMANN, SULLIVAN and LABRECQUE.
Mr. Samuel A. Larner argued the cause for appellants (Messrs. Budd, Larner & Kent, attorneys).
Mr. Andrew V. Clark argued the cause for respondents (Messrs. Seaman & Clark, attorneys; Mr. Burton T. Gans, on the brief).
*157 The opinion of the court was delivered by LABRECQUE, J.A.D.
Defendants appeal from a final judgment in the Law Division, based upon a jury verdict which awarded $13,500 to the infant plaintiff and $1,000 to her father per quod for injuries arising out of the negligent maintenance and operation by defendants of a mechanically operated hobby horse. Defendants' subsequent motion for a new trial was denied but the verdict in favor of the father was reduced to $725.50, the amount of his out-of-pocket medical expenses. The present appeal followed.
On January 6, 1961 the infant plaintiff, then aged 2 1/2 years, accompanied her mother on a shopping trip to the Woolworth Five and Ten Cent Store (Woolworth's), in Perth Amboy. In Woolworth's a mechanically operated hobby horse, owned by Kiddielane Corp. (Kiddielane), maintained by Automatic Concession Corp. (Automatic), and leased to Woolworth's, had been set up for use by the latter's customers.
The device was mounted upon a base and activated by a three-quarter horsepower electric motor through a vertical shaft, upon which the hobby horse was mounted. When a coin was inserted by a customer the motor went into action, moving the vertical shaft, with its attached horse, up and down. During each stroke (up and down) there would be a difference of 1 1/2 inches between the shaft's lowest and its highest position. The speed of the device varied from 45 to 110 revolutions per minute.
The motor was equipped with a gear box which had a large counterweight attached. The gear box regulated the speed of each stroke, while the counterweight was intended to produce a gradual, rather than a sudden increase in the speed of the machine. Thus, when a child would be put on the horse and a coin inserted, the machine would not attain its full speed for several seconds after it started. The "saddle" on the horse was equipped with a saddle horn (unmarked), which, when turned, would vary the speed of the up and down movement. The horse was equipped with reins and stirrups. There was no sign or instruction of any kind, either on or near the horse, *158 and no attendant to give warning or advice. Additional facts covering the nature and manner of operation of the machine will be discussed infra.
When the infant plaintiff, Barbara Ann, saw the hobby horse she asked her mother if she might have a ride. Mrs. Savoia lifted her on to the saddle and inserted a coin in the proper slot. The horse began to move up and down, as she described it, "real fast," with a "jerky movement." Although Barbara Ann was holding on to the saddle horn with both hands, she was "bouncing around" and having difficulty staying on the horse. As Mrs. Savoia was attempting to put her arms around Barbara Ann's waist to brace her, but before she could do so effectively, Barbara Ann lost her grasp and was thrown from the horse against an adjacent wall, striking a radiator as she fell and sustaining rather severe injuries.
Suit was instituted against Woolworth's, Automatic and Kiddielane, charging that one or more of them had so "negligently manufactured, managed, maintained, operated and controlled the said mechanical hobby horse that the same was caused to become dangerous, hazardous and unsafe as a result of which the infant plaintiff, Barbara Ann Savoia, was caused to fall," and seeking damages for her injuries and the expenses and loss of services sustained by her parents, Patrick and Helen Savoia. The jury's verdict was against all three defendants.
During the presentation of plaintiffs' case one Robert Traube was called as an expert witness. Traube testified that he was a "self-employed consulting engineer," licensed to practice in New Jersey for the past five years. He had received his engineering training at New York University and Virginia Polytechnic Institute, having been awarded a Bachelor's Degree in Civil Engineering from the latter institution. He was a member of the National Society of Professional Engineers, the Raritan Valley Society of Professional Engineers, the American Society of Civil Engineers and the Consulting Engineers Council. Prior to entering private practice he had been employed by the Pennsylvania Railroad, Pierson *159 and McWilliams, architects, and the Haller Testing Laboratories. He also had seen service with the United States Corps of Engineers.
Traube affirmatively stated that he was familiar with the "motion" of mechanically operated hobby horses, such as the one found in Woolworth's, and with the forces exerted on persons who would be subjected to such motion. Under cross-examination he admitted that he had never examined the hobby horse in question. Neither had he ever been involved in the examination or manufacture of mechanically operated hobby horses. However, he was familiar with the vibratory action created by their up and down movement. An objection to his qualifications was overruled, the court noting that he was an engineer with "experience and knowledge of harmonics and vibratory motion, which he has studied and to which he has testified."
In answer to a series of hypothetical questions Traube testified that, in his opinion as an engineer, the vibratory motion of a device of the type indicated created violent action and "dissonances" when the horse was moving up and down. As a result, a child would "bounce" up and down while the horse was moving. To prevent this, he was of the opinion that some kind of three-point stabilizing affect was needed.
He described "dissonance" and its effects as follows:
"Q. Insofar as this dissonance of which you speak, will you tell us in a vibratory motion what dissonance is?
A. Maybe I best describe it as an example. As you are pushing a child on a swing, for instance, if you are pushing with the same frequency, the same speed in which the child is going, the motion is rather calm or harmonious, but if you should suddenly change, push the child in opposite directions, the then motion would become violent. And in this case when the horse is going down the child is going up and when the horse is coming up the child is going down. There is a clashing or dissonance, which is the opposite of resonance, in which the child and the horse is going up uniformly. This is as best I can describe dissonance. There is a clashing effect.
Q. Now what happens when this clashing effect takes place, Mr. Traube?
A. There is a violent action or a throwing. I cannot say how far or what the magnitude of the force is, but it is violent.
*160 Q. And is this resonance and dissonance a well known engineering fact, something that is familiar to engineers and in the engineering field generally?
A. Oh, yes. We train in that.
Q. So that this is something which is common or well known in all vibratory devices, is that right?
A. That's correct.
Q. And has there been anything done with that hobby horse from the photograph that you could see to overcome this well known engineering fact?
MR. GROSS: I object to the question. The witness cannot know what this particular hobby horse does.
THE COURT: As I say he is subject to cross examination. I will allow it, from the picture.
A. No, sir, I didn't see anything." (Emphasis added)
Initially, plaintiffs urge that defendants' appeal be dismissed for failure to comply with numerous rules of court. They point out that (1) defendants did not, as required by R.R. 1:2-8(a), R.R. 2:2-5, certify, by endorsement on their notice of appeal, that on a date stated they had complied with R.R. 1:2-8(e) made applicable by R.R. 2:2-5; (2) they failed to file the deposit for costs required by R.R. 1:2-10, R.R. 2:2-5; (3) they failed to file and serve copies of their brief and appendix within 30 days of the filing of the stenographic transcript of the trial, contrary to R.R. 1:7-12(a), R.R. 2:7-3; (4) their appendix omits considerable pertinent testimony which they should have reasonably assumed would be relied upon by respondents on appeal, R.R. 1:7-1(f); R.R. 2:7-1, and (5) no extension of time was requested pursuant to R.R. 1:7-13; R.R. 2:7-1.
Our rules are designed to facilitate the business of the court and advance justice, and may be relaxed or dispensed with where it is manifest that a strict adherence to them will work surprise or injustice. R.R. 1:27A. Where noncompliance therewith is due to the neglect or forgetfulness of counsel and not to any conduct of the litigant, and the other party has not been prejudiced, dismissal will not ordinarily be granted where other measures, short thereof, will suffice. This rule has been applied in situations where counsel has failed to file a brief or appendix on time or seek an extension of time to do *161 so, Gnapinsky v. Goldyn, 23 N.J. 243, 248 (1957) (where the litigant was held to be "personally blameless"); has omitted relevant testimony from his appendix, Paxton v. Misiuk, 34 N.J. 453, 458 (1961) ("litigant should not be burdened with his attorney's derelictions"); has failed to file security for costs, In re Caruso's Will, 18 N.J. 26 (1955), or has filed a defective notice of appeal, State v. Radicchi, 78 N.J. Super. 286, 291 (App. Div. 1963) ("State suffered no prejudice as the result of the procedural irregularities"). See also, Kazanjian v. Atlas Novelty Co., 34 N.J. Super. 362 (App. Div. 1955); Fotopak Corp. v. Merlin, Inc., 34 N.J. Super. 343 (App. Div. 1955); Preparatory Temple, etc. v. Seery, 81 N.J. Super. 429 (Ch. Div. 1963); Vonella v. Northern Assurance Co., 61 N.J. Super. 348 (Law Div. 1960). Here, while noncompliance with the rules is self-evident, defendants are in no wise at fault for these omissions of their counsel. No prejudice has been suffered by plaintiffs, for they eventually received defendants' brief and appendix and filed their own brief and appendix many months ago. Further, the testimony allegedly omitted from defendants' appendix has been included in plaintiffs' appendix and may be made the subject of an application for costs. Lohmann v. Lohmann, 50 N.J. Super. 37 (App. Div. 1958); Zachariae v. Division of New Jersey Real Estate Comm'n, 53 N.J. Super. 60 (App. Div. 1958). We accordingly decline to dismiss, and proceed to consideration of the merits.
Appellants first urge that the trial court committed reversible error when it ruled that the witness Robert J. Traube was qualified to testify as an expert. They cite Traube's general unfamiliarity with mechanically operated hobby horses and his admission that he had never physically examined the hobby horse in question but based his opinion on photographs of the horse which had been admitted into evidence, and the facts as related in the hypothetical questions.
The rule is generally well settled that the trial judge is vested with wide discretion in passing upon the qualifications or competency of an expert witness to testify in a given *162 situation. Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 411 (1960); Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 85 (App. Div. 1961); State by State Highway Commissioner v. Williams, 65 N.J. Super. 518, 523 (App. Div. 1961); Olivera v. Hatco Chemical Co., 55 N.J. Super. 336, 351-352 (App. Div. 1959); Robbins v. Thies, 117 N.J.L. 389, 398 (E. & A. 1936). The trial judge's determination thereon will not be disturbed unless there has been a clear abuse of discretion, Henningsen v. Bloomfield Motors, supra, 32 N.J., at p. 411, or it is clearly shown to be erroneous as a matter of law, Rempfer v. Deerfield Packing Corp., 4 N.J. 135, 141 (1950).
The opinions of an expert are required to be based upon facts within his own knowledge, to which he testifies, or, in the case of a hypothetical question, upon facts and inferences supportable by the proofs, i.e.  "evidence which there is a fair possibility the jury will accept." Angel v. Rand Express Lines, Inc., supra, 66 N.J. Super., at p. 85; Stanley Co. of America v. Hercules Powder Co., 16 N.J. 295, 305-306 (1954); Fink v. City of Paterson, 44 N.J. Super. 129, 135 (App. Div. 1957). Once the testimony and opinion of an expert have been held to be admissible, the issues of his credibility and the weight to be accorded his testimony are universally considered to be within the province of the jury. Lewis v. Read, 80 N.J. Super. 148, 171 (App. Div. 1963). It goes without saying that the weight to be accorded his opinion depends upon and can rise no higher than the facts upon which it is predicated. Panko v. Grimes, 40 N.J. Super. 588, 596 (App. Div. 1956).
In passing upon the qualifications of Traube, the trial judge was required to determine whether he possessed peculiar knowledge or experience not common to the world which rendered his opinion founded on such knowledge or experience of some aid to the court or jury in determining the questions at issue. Rempfer v. Deerfield Packing Corp., supra, 4 N.J., at pp. 141-142; Miller v. Muscarelle, 67 N.J. Super. 305, 317 (App. Div. 1961), certification denied 36 N.J. 140 *163 (1961). We are satisfied that he did not commit an abuse of discretion in holding that Traube's testimony and opinion came within the ambit of the foregoing rule.
While the device in question was characterized as a mechanical hobby horse, it was, from an engineering standpoint, no more than a device to produce an up and down movement of a vertical shaft through the use of an electric motor operating through a gear box to which a counterweight was attached. The vertical shaft supported the hobby horse, the latter being no more than the means furnished to support the user. A miniature boat, sulky or carriage could have served equally as well. Traube was qualified as an engineer familiar with the dissonances (vibrations) set up by the operation of such a device, and their effect. These were engineering problems. True, he was reluctant to be classified as an expert on hobby horses, but the record leaves us in grave doubt as to whether such a separate classification actually existed.
Defendants, in addition, urge that plaintiffs failed to lay a proper foundation for Traube's opinion. In essence, they contend that, in the admitted absence of an inspection of the hobby horse actually involved, he should not have been permitted to testify. But Traube was familiar with the operation of hobby horses generally and was furnished with photographs of the one here involved. Defendants' contention somewhat resembles that raised in Ginnelly v. Continental Paper Co., 57 N.J. Super. 480 (App. Div. 1959), certification denied 31 N.J. 293 (1960). There the issue was whether a certain ladder had been properly constructed and plaintiff produced an engineer who, notwithstanding a lack of personal observation of the ladder, or the floor on which it had rested, testified, on the basis of photographs shown to him, that the ladder was not properly constructed. We there held:
"* * * Connolly never observed the floor of defendants' warehouse and never saw the ladder in question. Nevertheless he studied a number of photographs of the scene prior to the trial, and he testified on the basis of his inspection of the photographs. These photographs were *164 admitted into evidence. This method of eliciting expert testimony of a defect in the ladder was objected to, but the trial judge overruled the objection on the ground that an expert could render an opinion from a photograph, just as he could from a hypothetical question stating the facts which appeared in the photograph. This ruling was clearly correct and in no sense an abuse of the trial judge's discretion. * * *" (at pp. 494-495)
Here, in addition, the opinions of Traube were elicited by means of hypothetical questions. In response, he testified that the device lacked transverse stability, i.e., the saddle was so constructed as to produce a side displacement or unseating effect upon the "rider" when the motor started up. The stirrups, which were "very long, down far below the child," did not furnish the requisite stability, although a tripod or "C handle" would have done so. It was not error to permit the challenged testimony.
In any event, admission of the testimony in question cannot be said to have prejudiced defendants. R.R. 1:5-3(b). Confirmation of Traube's opinion is found in the subsequent testimony of Leo Blitzer, Kiddielane's field supervisor, to the effect that the device in question had originally been designed as a reducing machine for adults; the "hobby horse" represented a conversion of the reducing machine for use by children but was "unsafe" for a 2 1/2-year-old child.
We turn, finally, to defendants' contention that the refusal of the trial judge to charge the jury that the negligence of Mrs. Savoia barred a recovery by her husband, amounted to prejudicial error. The trial judge refused to charge a request to that effect and affirmatively instructed the jury that the father's claim for medical expenses "stands or falls" on his child's claim. There was no proof of any expenditure made by the wife and the jury was instructed that it could not render any verdict in her favor.
Defendants urge that the action of Mrs. Savoia, in placing her 2 1/2-year-old daughter on the hobby horse without continuously supporting her, afforded a basis for a finding of contributory negligence by the jury. Such contributory negligence, it is contended, would preclude recovery by the father *165 for any losses sustained by him as a result of his daughter's injury. In support defendants cite Riesberg v. Pittsburgh & Lake Erie Railroad Company, 407 Pa. 434, 180 A.2d 575, 580 (Sup. Ct. 1962); Connelly v. Kaufmann & Baer Co., 349 Pa. 261, 267-268, 37 A.2d 125, 128, 152 A.L.R. 555 (Sup. Ct. 1944); Parks v. Parks, 390 Pa. 287, 303, 135 A.2d 65, 74 (Sup. Ct. 1957); Cirsosky v. Smathers, 128 S.C. 358, 122 S.E. 864 (Sup. Ct. 1924), and Watson v. Southern Ry., 66 S.C. 47, 44 S.E. 375 (Sup. Ct. 1903). They argue that the availability to them of the defense of contributory negligence should not depend on the fortuitous circumstance that the parent who is guilty of contributory negligence be the one who seeks to recover for expenditures connected with the injury sustained by the child.
Neither the efforts of counsel nor our own research have revealed any case in which our courts have passed directly upon the question thus raised. The general rule appears to be that, since passage by the various states of statutes similar to our Married Women's Act, R.S. 37:2-8, the wife has been regarded as a separate individual whose negligence is no more to be charged against her husband than in the case of any other person. Prosser, Torts 301-302 (2d ed. 1955).
The facts here involved somewhat resemble those in Illingworth v. Madden, 135 Me. 159, 192 A. 273, 110 A.L.R. 1090 (Sup. Jud. Ct. 1937). There, recovery was sought for injuries sustained by a minor child who had been struck by defendant's car as he was being towed on a toboggan by a car in which his mother was riding. The father joined in the suit for his consequential damages. It was urged that the mother had been negligent in allowing her son to ride on the toboggan, and that such negligence on her part barred any recovery by her husband. In disposing of this contention, the court held:
"* * * Assuming, however, that she was negligent in not preventing the boy's misadventure, we are not of opinion that her dereliction of duty is imputed to her husband. He was not present, took no part *166 in the proceeding, and had no control over it. In his absence, his wife was charged with the custody and care of their son in her own right under the statute which gives the father and mother joint right to the care, custody, control, services, and earnings of their children and denies to either parent any paramount right over the other with reference to any matter affecting such children. R.S. chap. 72, § 43. Under the Married Women's Act, a husband has no direct interest in or right of control over actions brought by the wife for the preservation and protection of her property and personal rights or for the redress of her personal injuries, but she may sue in her own right at law or in equity as if unmarried. R.S. chap. 74, § 5. And a husband is not liable for his wife's torts in which he takes no part, but she is liable therefor as if she were sole. R.S. chap. 74, § 4; Marcus v. Rovinsky, 95 Me. 106, 49 A. 420. The independence of married women under the laws of this state leaves no room for indulgence in the theory that a wife, in exercising her right to the care and custody of her child in her husband's absence and free from his control, acts under and by virtue of authority delegated by him, or that damages recovered by either parent for losses incident to injuries to their child belong beneficially to both. Husband and wife do not constitute in this state a legal community known to the laws of some jurisdictions." Id., at 192 A. 273, 277.
The rule enunciated in Illingworth has been followed in a majority of jurisdictions. Atlanta & C. Air-Line Railway Co. v. Gravitt, 93 Ga. 369, 20 S.E. 550, 556, 26 L.R.A. 553 (Sup. Ct. 1894); Macdonald v. O'Reilly, 45 Ore. 589, 78 P. 753, 754 (Sup. Ct. 1904); Phillips v. Denver City Tramway Co., 53 Colo. 458, 128 P. 460 (Sup. Ct. 1912); Love v. Detroit J. & C.R. Co., 170 Mich. 1, 135 N.W. 963 (Sup. Ct. 1912). See also Annotation, "Negligence of one spouse as imputable to other because of the marital relationship itself," 110 A.L.R. 1099, 1104 (1937). Compare Consolidated Traction Co. v. Hone, 59 N.J.L. 275 (Sup. Ct. 1896), reversed on other grounds 60 N.J.L. 444 (E. & A. 1897), where it was held that there could be a recovery for the benefit of the sole next of kin in an action under the Death Act, notwithstanding his own contributory negligence. To the same effect: Cloyes v. Delaware Tp., 41 N.J. Super. 27, 37 (App. Div. 1956), affirmed 23 N.J. 324, 57 A.L.R.2d 1327 (1957).
*167 We have examined the authorities cited by defendants in support of the claimed imputation of negligence between plaintiffs husband and wife herein and find them to be inapposite. Where not based upon the common law rule that the husband and wife were one, they appear either to follow the rule, applicable in some states, that the husband and wife have a community of interest in the proceeds of a recovery by either, or to proceed upon the assumption that the obligation of a spouse to care for a child is derived from a delegation of authority by the other spouse. See Herrell v. St. Louis-San Francisco Railway Company, 324 Mo. 38, 23 S.W.2d 102, 69 A.L.R. 470 (Sup. Ct. 1929); Solko v. Jones, 117 Cal. App. 372, 3 P.2d 1028 (D. Ct. App. 1931); Dallas Ry. & Terminal Co. v. High, 129 Tex. 219, 103 S.W.2d 735 (Sup. Ct. 1937); Darbrinsky v. Pennsylvania Co., 248 Pa. 503, 94 A. 269, L.R.A. 1915 E, 781 (Sup. Ct. 1915); Keena v. United Railroads of San Francisco, 57 Cal. App. 124, 207 P. 35 (D. Ct. App. 1922), reversed on other grounds, 197 Cal. 148, 239 P. 1061 (Sup. Ct. 1925); Riesberg v. Pittsburgh & Lake Erie Railroad Company, supra; Cirsosky v. Smathers, supra. The community property rule does not obtain in this State, nor does the obligation of a mother to care for her child depend upon a delegation of authority from her husband. The common interest of each parent towards the child does not, of itself, make one the agent of the other or responsible for that other's negligence. Macdonald v. O'Reilly, supra (78 P., at p. 754).
Accordingly, the trial judge properly declined to instruct the jury that contributory negligence of the mother of the minor plaintiff was imputable to her husband and barred a recovery by him.
The conclusions thus reached render it unnecessary to pass upon plaintiffs' contention that the proofs were inadequate to support a finding of contributory negligence on the mother's part  hence it would have been error to submit that issue to the jury.
Affirmed.