**BAYAMON THOM McAN, INC., et al.,**
Defendants, Appellants,

v.

Eileen Josefina **MIRANDA** et al.,
Plaintiffs, Appellees.

**KIDDIELANE FLORIDA CORPORATION,** Defendant, Appellant,

v.

Eileen Josefina **MIRANDA** et al.,
Plaintiffs, Appellees.

Nos. 7104, 7105.

United States Court of Appeals
First Circuit.

Heard Feb. 4, 1969.

Decided April 22, 1969.

William Estrella, San Juan, P. R., with whom Beverley, Rodriguez, Estrella & Pesquera, San Juan, P. R., was on brief, for appellants in No. 7104.

Antonio M. Bird, San Juan, P. R., for appellant in No. 7105.

Harvey B. Nachman, San Juan, P. R., with whom Salvador Antonetti Zequeira and Nachman, Feldstein, Laffitte & Smith, San Juan, P. R., were on brief, for appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

These are appeals from judgments on plaintiffs' verdicts in a negligence action in the district of Puerto Rico, with jurisdiction being based on 48 U.S.C. § 863, all of the defendant corporations being non-domiciliaries of Puerto Rico. The minor plaintiff, Eileen Josefina Miranda Skerret, recovered $100,000 from defendants-appellants for damages resulting from a fall from a hobbyhorse in 1963, when she was a fifteen month old infant. Her parents recovered damages of $30,-000. The horse is owned by defendant-appellant Kiddielane Florida Corporation (Kiddielane), and was installed in defendant-appellant Bayamon Thom McAn, Inc.'s (Bayamon) store pursuant to a lease agreement between defendant Melville Shoe Corporation (Melville) and Kiddielane. Bayamon, a New York corporation, and subsidiary of Melville, operates a shoe store in Bayamon, Puerto Rico.

Taking the evidence most favorable to plaintiffs, the facts are as follows. On June 1, 1963, the minor plaintiff, accompanied by her mother, another child, and two adult neighbors, entered the Baya-

mon shoe store. The minor plaintiff's mother was looking for tennis shoes for her daughter. A salesman took her order. The minor plaintiff then asked her mother to give her a ride on a hobbyhorse installed in the children's department of the store. The other child, two years and two months old, also asked for a ride.

The mother placed both infants in the saddle at the same time. The other child sat in the front of the saddle, holding the reins while the minor plaintiff sat in the rear of the saddle, with her hands around the other child's waist. The mother placed a coin in a slot in the horse and it commenced to operate. She demonstrated to the jury the position she and the girls were in, saying, "Well, what I was holding, like this, my girl was here and I was holding like this next to them at all times, right beside them * * * she was sitting here and I was touching her leg and a portion of the horse, right here next to the horse."

While the girls were riding the horse, the salesman returned from behind the mother and said, "Lady, here are the shoes you asked for." The mother testified " * * * I turned toward the back to my left, swinging from my left" and that in turning she "must have" removed her hands from the horse, apparently demonstrating to the jury during cross-examination how she turned. The salesman then shouted, "Watch-out, the girls are falling." Both children then fell to the floor. She picked up her daughter, then unconscious, and left the store shortly thereafter. The girl was later taken to a hospital; surgery was performed; she is now mentally retarded.

Plaintiffs alleged specifically that defendants acted negligently in failing to post signs or warnings as to the operation of the device, in failing to have straps or seat belts with which to secure the safety of infants, in failing to place rugs or cushions about the device in view of the fact that the horse was on a hard terrazzo floor, and in "interrupting and distracting" the mother while supervising her child on the device.[1]

While a dozen issues have been briefed and argued, we find it necessary to deal extensively with only the issue of the propriety of the district court's action in denying motions for judgment notwithstanding the verdicts. Appellees advance the contention that appellants failed to preserve the issue by moving for a directed verdict at the close of all the evidence in accordance with Fed.R. Civ.P. 50(a).

The procedural background is the following. Before the plaintiffs rested, the court stated that it anticipated motions for a directed verdict at the end of the testimony, but added that "I do believe that there is sufficient in evidence now that I am going to let a jury look at it with the reserved ruling on your motions for a directed verdict, so you might as well prepare along that line, that I will let the matter go to the jury." Counsel for one of the defendants then asked " * * * with respect to a motion I was going to present for a directed verdict, as it stands, it will be considered that I did file my motion?" The court responded "No" and elaborated " * * * I will take a recess after the liability * * * where you gentlemen can properly make your motions and you can do that, of course, after the testimony is in and everything else. You will have a time in which you can properly present your motions."

After plaintiffs rested, motions for a directed verdict were filed on behalf of all defendants. To a question inquiring if they had been granted or not, the court replied, "No. However, I have not denied it. I am following the usual federal practice of reserving ruling on it; if the verdict is against you, you can still argue it anyway."

---

1. Plaintiffs further alleged that the horse "jerked and bolted more frequently when the rider pulled the bridle reins", but this specification was eliminated before the case was submitted to the jury.

Thereupon counsel for two defendants submitted eight exhibits which had been identified in the pre-trial order—none having to do with the issues of negligence of the defendants or contributory negligence of the mother.[2]  He then read to the jury a brief portion of a deposition given by the mother in which she had said she had told her husband "I let the girl fall".  This counsel then rested.  Counsel for the remaining defendant then unsuccessfully sought the admission of a few other extracts from the deposition, and had the marshal operate the horse for the jury.  He then said, "In view of the evidence submitted by the party plaintiff I decided to submit the case on the plaintiff's evidence."  After a short recess, arguments to the jury commenced.

Six days after the verdicts were rendered, in discussing supplemental issues not now before us, the court concluded the hearing by saying, "All right, gentlemen, then in due course I will expect to receive a motion for judgment notwithstanding the verdict, and then I will rule on that in due course."  Subsequently, after such motions were made, the court denied them on the merits, noting, in passing, that no motions for a directed verdict had been made at the close of all the evidence and that possibly the motions were not proper.

■  We are well aware of the stringent rule—that when a defendant, after moving for a directed verdict at the end of the plaintiff's case, fails to renew his motion at the close of all the evidence, he is deemed, as the cases say, to have waived his right to move for judgment notwithstanding the verdict.  Home Ins. Co. of N. Y. v. Davila, 212 F.2d 731 (1st Cir. 1954).  While the purpose of the required motion at the end of all the evidence is to give the trial court the opportunity to reflect on the applicability of the law to the total case, procedural

wrangles would multiply if the requirement could be deemed nonessential upon a mere showing of a court's continuing disinclination to grant such a motion.  A rigorous adherence to the requirement, not difficult to know or to comply with, is sensible and in accord with the objectives of Rule 50.

In this case, however, there would seem to be ample reason for holding that appellants had preserved the right to move for judgment notwithstanding the verdicts.  In the first place, the court itself not only expected motions for a directed verdict but preliminarily indicated its disposition to let the case go to the jury and instructed counsel to plan accordingly.  The court further indicated that counsel would have a time for the proper presentation of the motions and that, if verdicts issued against defendants, they could still argue the question.

■  Technically the court was in error in expressly reserving its ruling.  Its ruling, had there been no further evidence, would have been reserved by operation of Rule 50 itself; on the other hand, its reservation of its ruling on the threshold of the presentation by the defense was an idle gesture.  As Judge Magruder observed in his separate opinion in Stevens v. G. L. Rugo & Sons, Inc., 209 F.2d 135, 143 (1st Cir. 1954), the Rule 50(a) motion would have "expended itself" on the introduction of defense evidence.  Consequently, in the present case, there would have been no issue pending for which judgment could be reserved.  In a sense the court may well have led counsel reasonably to believe that all had been done that was necessary.

■  This factor alone would be of no avail to appellants had the evidence subsequently presented been previously unrevealed, lengthy, or relevant to the issues raised by the motions for a directed ver-

---

2.  These exhibits consisted of an insurance certificate, photographs of the interior of the Bayamon store, the Kiddielane-Melville lease agreement, a letter from Melville's insurer to Kiddielane, a cer-

tificate of the Puerto Rican Department of State, copies of both a request for admissions and the answer to the same, and a copy of the complaint.

dict. *See, e. g.,* A. & N. Club v. Great American Ins. Co., 404 F.2d 100 (6th Cir. 1968). But this part of the trial, occupying only two pages of transcript and involving no more than a few minutes, held no surprises. The evidence, being taken from earlier identified exhibits and a deposition, did not bear on the question of defendants' negligence and contained one item directed at impeaching testimony which had been given by the mother. There is no possibility that any of this could have changed the court's mind in ruling on a repeated motion. The factual and procedural contexts were very similar to those in United States v. 353 Cases, 247 F.2d 473 (8th Cir. 1957), where, with a trial virtually at an end, the court held that rebuttal on subordinate issues after a motion had been made did not have the effect of waiving the legal issue raised by the motion. *See also* Bates v. Miller, 133 F.2d 645, 648 (2d Cir. 1943), citing Lancaster v. Foster, 260 F. 5 (5th Cir. 1918). In the absence of any authority to the contrary, in a case combining the kind of judicial assurance concerning preservation of rights at the time of motion and the brief and inconsequential evidence following the motion, we deem that this is a proper case for the liberal construction commended by Fed.R.Civ.P. 1 in the interests of justice. So, we suspect, did the district court feel when it decided the motions for judgment notwithstanding the verdicts on the merits.

Holding, as we do, that appellants preserved their rights to challenge the action of the trial court in allowing the questions of negligence and contributory negligence to go to the jury, we face three separate queries: was there a jury question of negligence on the part of Kiddielane, the owner of the hobbyhorse, and Melville, which had executed the agreement resulting in the installation of the horse in the store? Was there a like question with regard to Bayamon? And, as a matter of law, was the accident solely attributable to the mother's negligence?

■■ We note first that the court, without objection from counsel, ruled that Melville had no responsibility for the conduct of Bayamon's employees. We therefore face the question whether either Kiddielane or Melville had any duty to equip the hobbyhorse with straps or seat belts, warning signs, or surrounding rugs or cushions. The hobbyhorse, unlike those in Savoia v. F. W. Woolworth Co., 88 N.J.Super. 153, 211 A.2d 214, 14 A.L.R.3d 804 (1965), Danielson v. Reeves, 211 Minn. 491, 1 N.W.2d 597 (1941), and O'Rourke v. Marshall Field & Co., 307 Ill. 197, 138 N.E. 625, 27 A.L.R. 1014 (1923), was not defective in structure or eccentric in operation. *See also* Rodriguez v. Aponte, 78 P.R.R. 719 (1955).[3]

Any hazard connected with its use was obvious. Lopez v. Garcia, 86 P.R.R. 666 (1962); Munoz v. Fabian & Co., 71 P.R.R. 454 (1950). That an unattended small child (who could mount the horse only with the help of an adult) could be injured by falling from it was no more true of the horse than of any number of other devices—a swing, a high bar, or even a chair. No case has been cited to us holding that the manufacturer or installer of such a piece of apparatus owes a duty to equip it with notices (to be read by adults to whom the hazards of use by infants would be obvious), straps, or cushions. *See* Morris v. Toy Box, Inc., 204 Cal.App.2d 468, 22 Cal. Rptr. 572 (1962) (bow and arrow). *Cf.* Thomas v. Goldston, 1967 Mass.Adv.Sh. 1452, 230 N.E.2d 908 (1967) (miniature merry-go-round); Susman v. Mid-South Fair, 180 Tenn. 471, 176 S.W.2d 804 (1944) ("Whip"); Gardner v. G. Howard Mitchell, Inc., 107 N.J.L. 311, 153 A. 607 (1931). ("Dodgem"). Nor does

---

3. That injuries may result from the use of playthings does not convert them, without more, into dangerous instrumentalities. *See, e. g.,* Strahlendorf v. Walgreen Co., 16 Wis.2d 421, 114 N.W.2d 823 (1962) (toy airplane); Maramba v. Neuman, 82 Ill.App.2d 95, 227 N.E.2d 80 (1967) (boomerang); Morris v. Toy Box, Inc., 204 Cal.App.2d 468, 22 Cal. Rptr. 572 (1962) (bow and arrow).

appellee cite any case, from Puerto Rico or elsewhere, which has held analogous facts to constitute a basis for liability.

■■■ While this reasoning compels us to order that the verdict against Melville and Kiddielane be set aside and judgment be entered for those defendants, we affirm the judgment on the verdict against Bayamon. We keep in mind not only the stricture that a reviewing court must consider the evidence and inferences therefrom favorable to the prevailing party, but the fact that the testimony of the mother as to the critical moment preceding the infant's fall was in part accompanied by physical demonstration of her position and the movement of her body in the direction from which the salesman allegedly called to her.

■ We concede that the cold print of the transcript conveys nothing but a polite message that the clerk had the merchandise which the mother wanted to see. But the duty of Bayamon and its employees is measured by what is reasonably foreseeable under the circumstances. Goose v. Hilton Hotels, 79 P. R.R. 494 (1956), Weber v. Mejias, 85 P.R.R. 72 (1962). We cannot say that the jury could not reasonably have found that the salesman should have seen the mother precariously supporting the children on the horse largely with her body, that he should have realized that calling to her from behind might have startled her and caused her instinctively to turn away from the horse and release her support, and that nevertheless, heedless of her predicament, he did so call to her. Statler v. St. Louis Arena Corp., Mo., 388 S.W.2d 833 (1965) (employee's failure to warn "flying cage" customer to hold bar held negligent); Brown v. Columbia Amusement Co., 91 Mont. 174, 6 P.2d 874 (1931) (merry-go-round attendants have obligation to protect children imperiled by unexpected centrifugal force); Arndt v. Riverview Park Co., 259 Ill.App. 210 (1930), 75 A.L.R.2d 806 (merry-go-round attendant's negligence in allowing two children—one holding the other, but without being fastened—to ride same horse was jury question).

It is, after all, within common human experience that a person preoccupied with attending to something or someone may be startled by a remark unexpectedly addressed to him.

■ As for negligence on the part of the mother, what we have just said indicates that we do not see any basis for declaring as a matter of law that her negligence was the sole cause of the accident. The question of her negligence, if any, and the extent, was properly left to the jury, which could observe her. While we would have thought it negligent for a woman who had placed two such small children in so precarious a position to allow her attention to be so easily distracted, we cannot quite say that the jury erred in finding that she was not guilty of negligence that contributed to the accident. For all that appeared, but for the distraction the children would have completed the ride successfully.

■■ Holding as we do, we need not deal with the issue whether or not Melville was subject to the jurisdiction of the court under the Puerto Rico Long Arm Statute (Rule 4.7 of the Rules of Civil Procedure of Puerto Rico), nor the question whether negligence of the mother can be imputed to the child to reduce the latter's recovery against a third person. Certain other questions were raised by appellants, challenging the accuracy of special interrogatories which were submitted to the jury and the refusal of the court to give certain instructions and submit specific interrogatories requested by appellants. As to the former, no objections were raised at trial. As to the latter, we conclude that the substance of most of the requests was adequately covered by the court and that it was not error to refuse those not given.

The judgments entered against defendant-appellant Bayamon Thom McAn, Inc. are affirmed. The judgments against defendants-appellants Kiddielane Florida Corporation and Melville Shoe Corporation are reversed with directions that the District Court enter judgments for these two defendants-appellants.