[No. 8-40012-3. Division Three. November 28, 1969.]

DENISE JOHNSON, *Respondent,* v. SAFEWAY STORES, INCORPORATED *et al., Appellants.*

*Norman R. Nashem, Jr.* (of *Nashem, Prediletto & Fortier*), for appellants.

*Robert A. Felthous* (of *Felthous, Brachtenbach & Peters*) and *Ray Browder,* for respondent.

Evans, C. J.—This is an action to recover for personal injuries sustained by a girl 9½ years old, when she fell from a mechanical hobby horse. The issues of liability and damages were tried separately to the court without a jury, and this appeal is on a short record raising issues only as to liability.

Appellants' assignments of error are directed to the court's findings: (1) that appellants were negligent and that negligence was a proximate cause of respondent's injuries, and (2) respondent was not guilty of contributory negligence.

The facts are not in serious dispute. On a Saturday evening, shortly before closing time, Mrs. Johnson, the mother of Denise and her younger sister Debbie, sent the two girls to appellant's store to obtain a loaf of bread. On prior trips the girls had noticed that a mechanical coin-operated hobby horse had been installed in the store. They asked for and were given permission by their mother to use part of the change from their purchase to ride the hobby horse. The device consisted of a facsimile of a horse mounted on a stand, so designed that an electric motor caused it to rock back and forth when a dime was deposited; first, the front legs moved up and down together, and alternately the rear legs did the same. The vertical motion in the saddle was 1¼ inches, and on the rump it was 1¾ inches. The distance from the low point of the saddle to the floor measured 42 inches. The horse rocked at a constant speed of 120 cycles

per minute and when the reins were pulled back the rate of speed increased to between 150 and 160 cycles per minute. The rate of vertical motion did not change and an increase in weight did not slow the machine. There was a sign on the horse which said, "Pull reins for fast gallop."

Plaintiff, Denise, rode the horse first. When it was Debbie's turn to ride she asked Denise to ride with her. Debbie sat in the saddle with her feet in the stirrups and Denise sat on the horse behind her. Denise steadied herself by holding on to Debbie by her waist, with her feet dangling as there were no stirrups for a second rider. There is some uncertainty in the testimony as to whether Denise was sitting in the saddle with her sister or behind the saddle on the rump of the horse. The girls thought Denise was sitting in the saddle. A Safeway employee, who saw the girls on the horse but did not see the subsequent fall, was of the impression that Denise was sitting on the rump of the horse behind the saddle. However, the court made no specific finding on this phase of the testimony and considered it of no particular significance in arriving at its decision.

Shortly after Debbie deposited the dime to start the ride Denise started to slide off the horse sideways. She was holding on to her sister's waist, and as she started to slide she pulled her sister Debbie backwards. This caused Debbie to pull on the reins, and this in turn caused the horse to speed up. When this occurred, Denise fell from the horse, struck her head on the floor, and received serious permanent injuries.

■ Appellants admit the issues on this appeal are primarily factual. However, they contend the trial court abused its discretion in deciding that appellants were negligent. The issue, however, is not one of abuse of discretion. The sole issue is whether the trial court's findings of fact are supported by substantial evidence and supportive of the resulting conclusions of law.

The appellants assign as error the trial court's following findings of fact:

9. The horse increases its motion by the rider pulling back on the reins. This is unsafe. The fact that the two children rode on the horse substantially increased the chance of falling once the fall had started because of the very nature of human beings to grab what is there to grasp in order to stabilize or catch a fall. In this case, the motion of the horse caused the plaintiff to begin to fall, which, in turn, caused her sister to begin to fall. The sister, who had hold of the reins, pulled back on the reins to stabilize or catch her fall. This caused the horse to increase its velocity which thus accentuated the problem, which, in turn, caused the plaintiff to fall off the horse.

12. The horse offers the front rider substantial protection from fall because the front rider is aided by the reins, stirrups, saddle and saddlehorn, but the lack of reins, stirrups, saddle and saddlehorn, coupled with the friction of the bouncing or moving horse, creates a foreseeable and expectable and substantial loss or reduction of balance to the second rider.

13. The addition of a handhold of some type and stirrups for the second person would eliminate most of the possibilities of falling. Such additions would be very minor and involve minimum expenditure.

There is ample evidence to support the above findings of the court as to what happened and why Denise fell. Clearly, the combination of circumstances as described in those findings created an unsafe condition for Denise, the second rider. The basic question, however, is whether the court's finding of fact that an unsafe condition existed sustained the court's conclusion of law that the appellants were negligent.

 It is conceded that Denise and her sister were business invitees of the appellants. The duty owed to such persons is to maintain the premises in a reasonably safe condition, and to warn of any danger which is known or discoverable by reasonable inspection. *Hartman v. Port of Seattle*, 63 Wn.2d 879, 389 P.2d 669 (1964). This duty extends to devices similar to the hobby horse in question. *Olsen v. John Hamrick's Tacoma Theatres*, 9 Wn.2d 380, 115 P.2d 718 (1941). *Olsen* also points out that the degree of care required in a given instance necessarily varies ac-

cording to the circumstances of the particular case, and one of the circumstances which the appellants were required to take into account in the instant case was the fact that the hobby horse was designed and intended for the use of children.

As stated in *Berry v. Howe*, 34 Wn.2d 403, 208 P.2d 1174 (1949), "With respect to an infant, one may reasonably expect the infant to exercise that degree of care which a person of the same intelligence, capacity, discretion, and experience would ordinarily use."

No exception was taken to the court's findings: (1) that it was common practice for children to ride double on horses of this type; (2) it was expectable and foreseeable that two children would attempt to ride this particular device double; (3) the defendants had notice of the tendency of children to ride double; and (4) an employee of appellants saw Debbie and Denise riding double shortly before the fall. There was no sign warning of the danger of riding double. Had there been such a sign the evidence establishes that the two girls were sufficiently intelligent to read and understand such a warning.

The trial court held the appellants had breached their duty to provide a reasonably safe amusement device to their business invitees and to warn of any known danger, and this breach of duty constituted negligence. With this conclusion we agree. See *Savoia v. F. W. Woolworth Co.*, 88 N.J. Super. 153, 211 A.2d 214, 14 A.L.R.3d 804 (1965); *Brown v. Columbia Amusement Co.*, 91 Mont. 174, 6 P.2d 874 (1931); *Reinzi v. Tilyou*, 252 N.Y. 97, 169 N.E. 101 (1929). As to the duty to warn see *Moordale v. Park Circuit & Realty Co.*, 41 S.W.2d 829 (Mo. App. 1931).

The appellants also assign as error the italicized portion of finding of fact No. 8, which reads as follows:

8. Introduced into evidence was a mechanical horse device substantially similar to the one from which the plaintiff fell. Its motion was testified to as being exactly the same. The motion of the horse is increased by the rider pulling back on the reins. At a low speed the mo-

tion seemed moderate, that is, even. *At the higher speed, with the reins pulled back, there seemed to be somewhat more jerkiness to the motion.*

The trial court's reference to "jerkiness" in the motion is obviously an observation made by the court when the action of the hobby horse in operation was demonstrated during the course of the trial.

█ The record does not disclose that any comments were made either by the court or by counsel during this demonstration, and there is, therefore, no basis upon which this court can determine whether there was or was not evidence to support this finding. However, as stated in *Hollingbery v. Dunn*, 68 Wn.2d 75, 411 P.2d 431 (1966), "Our function begins and ends with ascertaining . . . whether the findings as a whole sustain the challenged conclusion of [l]aw." We find that, without regard to finding of fact No. 8, the findings as a whole sustain the conclusion that appellants were negligent.

Appellants next assign as error the trial court's finding of fact No. 18 and the conclusion derived therefrom that respondent was not guilty of contributory negligence. This finding reads as follows:

18. While the plaintiff could be said to have some appreciation that she was in some danger of falling, she was not chargeable with a realistic appreciation of her specific problem, that is, the combined problem of the motion of the horse and the lack of stability. The plaintiff would have a general, rather unsophisticated appreciation that is insufficient to bind her either by assumption of the risk or to contributory negligence.

At the time of the accident respondent was 9½ years of age. The trial judge found she was behind her years in terms of comprehension and had been held back in school for 1 year. She was in the same grade as her sister Debbie, 13 months younger, and was 4 months behind that class in achievement. Additionally, the trial judge had an opportunity to observe Denise during the time she was on the witness stand. There is substantial evidence to support

the finding of the trial judge that respondent's appreciation of the specific problem was insufficient to render her guilty of contributory negligence. This finding will not be disturbed.

Finally, appellant assigns as error the failure of the court to conclude that respondent's poor balance resulting from earlier ear problems was the cause of her fall, and in making finding of fact No. 20, which reads as follows:

20. The evidence indicates a history of instability or some type of loss of balance of the plaintiff starting when she was approximately two and one-half years of age, after ear problems. This instability disappeared approximately one and one-half years prior to plaintiff's fall on March 20, 1965. At the time of the fall in question, as far as instability or loss of balance is concerned, there was no substantial difference between the plaintiff and other youngsters of comparable age. If there was any lightheadedness at the time of the fall, this would be more in the nature of a condition upon which the later events operated than a cause of the fall. The Court finds that any fall off this particular hobby horse would commence with a loss of balance and if proper equipment had been available it is probable that the plaintiff would not have fallen. Just prior to riding double, with resulting fall, plaintiff rode alone while seated in the saddle and using the stirrups and did not fall. The probable cause of plaintiff's fall was the absence of the safety factors for the plaintiff as the second rider on this horse.

There is evidence in the record that in October of 1958 a mastoidectomy was performed upon Denise. Following this operation she had balance problems and in 1962, when she was in the first grade, the teacher noted that she "falls easily." She also had a loss of hearing and was enrolled for a time in a lip-reading course but later her hearing returned and the course was dropped. There was evidence that in May of 1957 Denise fell into a fire and suffered burns. In September of 1963 she fell while playing and bruised her arm. In May of 1964 she fell while getting out of a swing and broke her arm. In February of 1965 she stepped into a hole and sprained her foot.

On the other hand, the mother of Denise testified that Denise, like most children, went through a stage which her mother designated as "clumsy" but which she outgrew; that she wasn't any more clumsy than the rest of Mrs. Johnson's children after the first year or two in school, and that Denise was an active child and had the usual and expected bruises and bumps. According to Dr. Tait, the family doctor, who had delivered Denise, and up to the time of the trial had seen her in excess of 120 times, the number of falls she experienced was not abnormal. He testified the mother brought her children in to see him at the first sign of illness. Dr. Tait had no record that Denise had any problem of balance. He was aware of the mastoid operation performed when she was 2 years old and which temporarily affected her hearing for a period of approximately 6 months. A teacher who had Denise as one of her pupils for 7 months prior to the accident and observed Denise on the school playground, as well as in class, testified the physical abilities and the ability of Denise to move about were normal.

There is substantial evidence to support the court's finding of fact No. 20 and those findings of fact support the trial court's conclusion that the probable cause of respondent's fall was the absence of safety factors and not any inherent poor balance on her part.

The judgment of the trial court is affirmed.

GREEN and MUNSON, JJ., concur.