IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of: | ) | No. 31584-3-III |
| | ) | |
| SANDRA KAY HUNT, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| SAMUEL EARL HUNT, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Samuel Hunt appeals the trial court's property and debt

distribution in his dissolution proceedings with Sandra Hunt. He contends that the trial

court failed to include three community debts in the division. He also contends that the

trial court abused its discretion when it refused to accept additional documentation on the

debts after trial. Finding no error, we affirm.

## FACTS

Sandra and Samuel Hunt[1] separated on September 11, 2011, after approximately five years of marriage. A dissolution of marriage trial was held. The parties debated over the distribution of personal property and debts as well as property and debts related to their sheep ranch and their butchering business, C&L Lockers.

On January 31, 2013, the court issued a memorandum decision. The court found, "Overall, the wife's evidence was found to be more credible than that of the husband. The wife was much better at documenting and backing up her claims. The husband's unsupported testimony about sheep deaths, property destruction, business debts, and the post-separation sale of his sheep business to a friend rendered much of his evidence difficult to believe." Clerk's Papers (CP) at 40. The court attached a dissolution property schedule to the memorandum opinion.

Following the memorandum decision but before the final decree was entered, Samuel filed a "Motion to Reopen, Reconsider and to Clarify."[2] CP at 8. Among other matters, Samuel contended that the trial court's decision failed to include three debts owed by the community. Two of the alleged debts were loans owed to Walter Miller for

---

[1] To avoid confusion, we refer to the parties by their first names.
[2] Sandra also filed a motion for reconsideration, which has no bearing on this appeal.

2

the purchase of livestock. Samuel included with the motion a bank balance sheet from February 2012 that showed the Walter Miller loans. This document was part of the trial evidence. On the loan document, one loan amounted to $182,490. Samuel contended that only one-half of this loan was owed by the community and the other one-half was owed by a third-party business partner, Dillon Summers. The second loan amounted to $46,410. As additional evidence, Samuel attached two contracts with Walter Miller for the purchase of livestock. The contracts were dated October 2010 and April 2011. Samuel did not produce these contracts at trial.

The third debt was owed by C&L Lockers. Samuel called attention to an exhibit entered at trial, which listed five amounts due on a spreadsheet. Also, he provided the court with verification for two of the debts owing at the time of the separation, totaling over $21,000. This verification evidence was not produced at trial.

The court held a hearing on the motion. Samuel contended that the court should admit the additional documentation attached to the motion because it corroborated and clarified testimony that was already presented at trial. The trial court did not allow Samuel to reopen trial and submit the new evidence. The court found that it would be improper to allow Samuel to reopen and reargue the substantial business debts that were supported by only weak evidence at trial. The trial court noted that it struggled with

3

Samuel's evidence at trial because, in some instances, all he offered to support his figures were interrogatory answers. He noted that Sandra accepted some of the figures, so the trial court did, too.

The court found that the new evidence was not any better. The court recognized that the new evidence to support the C&L Lockers debt did not match the figures he gave in his interrogatory answers submitted at trial. For the Walter Miller debts, the court found that the evidence at trial was weak and not credible. The court noted a substantial debt like the one claimed would have been entered into by contract, and that the contract was needed at trial. Furthermore, the court found that it was too late to accept what Samuel alleged to be contracts to support the figures that were used. While the court granted reconsideration to address other matters, it denied reconsideration for these debts. Samuel appeals.

## ANALYSIS

*Trial Court's Denial of Motion to Reopen/Reconsider.* Samuel contends that the trial court abused its discretion by refusing to consider the additional documents after trial. He contends that the additional documentation corroborated the trial evidence and was needed to rehabilitate his credibility.

A trial court's memorandum opinion is not a final decision and may be modified or abandoned before entry of the final judgment. *Chandler v. Doran Co.*, 44 Wn.2d 396, 400, 267 P.2d 907 (1954). "A motion to reopen a case for additional testimony is addressed to the sound discretion of the trial court, and the court's ruling will not be disturbed except for manifest abuse." *Rogers Walla Walla, Inc. v. Ballard*, 16 Wn. App. 81, 90, 553 P.2d 1372 (1976).

In *Winston v. Bacon*, 8 Wn.2d 216, 229, 111 P.2d 764 (1941), the trial court did not abuse its discretion when it refused to take evidence after entering a memorandum decision when the proffered evidence went to the heart of the controversy and reopening the case to admit the evidence would result in extensive additional litigation regarding hypothetical questions and technical responses. The reviewing court found, "The attempt to produce this evidence was made after the rendition of the memorandum decision, in order to eliminate the weaknesses in the appellants' proof which had been pointed out by the court. The vice in such a procedure is obvious." *Id.*

The trial court did not abuse its discretion when it refused to admit the additional evidence Samuel produced after trial. The evidence was not newly discovered; it could have been produced at trial with reasonable diligence. The 2010 and 2011 Walter Miller contracts Samuel wished to submit and the proof of debts incurred by C&L Lockers prior

to 2011 were available to Samuel before trial. Furthermore, the trial court found that the additional evidence presented by Samuel was weak and conflicted with the trial evidence. Particularly, the trial court referred to the conflicting trial and posttrial evidence regarding the C&L Lockers' debt. Indeed, Samuel's new evidence showed a debt of $16,308.55 owed by C&L Lockers to Ameristar Meats, while trial testimony shows this same debt to be $5,200.00.

*Winston* supports the trial court's decision not to reopen the trial to admit additional evidence. The contracts and bills did not conclusively address the community debt owed by the parties. Instead, admitting the additional evidence would have also required the trial court to reopen trial and take evidence on the balance of these obligations at the time of separation and to determine what portion of the Walter Miller debts belonged to the community. The additional evidence sought to eliminate the weaknesses in Samuel's case identified by the trial court's memorandum decision. The trial court did not abuse its discretion in refusing the additional evidence.

*Trial Court's Consideration of Community Debts.* Next, Samuel argues that the trial court abused its discretion when it failed to consider the community debts owed to Walt Miller and the community debts owed by C&L Lockers. He contends that the property distribution was not equitable and fair because it omitted these obligations.

6

"The trial court's considerable discretion in making a property division will not be disturbed on appeal absent a manifest abuse of that discretion. A manifest abuse of discretion is a decision manifestly unreasonable or exercised on untenable grounds or for untenable reasons." *In re Marriage of Tower*, 55 Wn. App. 697, 700, 780 P.2d 863 (1989) (citations omitted). "The trial court's decision will be affirmed unless no reasonable judge would have reached the same conclusion." *In re Marriage of Landry*, 103 Wn.2d 807, 809-10, 699 P.2d 214 (1985). The purpose of giving the trial court such deference is because the trial court "is in the best position to assess the assets and liabilities of the parties" in its duty to formulate a just and equitable outcome. *In re Marriage of Brewer*, 137 Wn.2d 756, 769, 976 P.2d 102 (1999). "The trial court's credibility determinations and resolution of the truth from competing evidence will not be disturbed on appeal." *Buck Mountain Owners' Ass'n v. Prestwich*, 174 Wn. App. 702, 720, 308 P.3d 644 (2013).

In a dissolution action, the trial court is tasked with distributing all property and liabilities before it, both community and separate. *In re Marriage of Stachofsky*, 90 Wn. App. 135, 142, 951 P.2d 346 (1998). The trial court must make a just and equitable disposition after considering the extent and nature of the separate and community

7

property, the duration of the marriage, and the economic circumstances of each spouse at the time the division becomes effective. RCW 26.09.080.

"The valuation of property in a divorce case is a material fact." *In re Marriage of Greene*, 97 Wn. App. 708, 712, 986 P.2d 144 (1999). Factual issues will not be retried on appeal but will be accepted if supported by substantial evidence. *In re Marriage of Thomas*, 63 Wn. App. 658, 660, 821 P.2d 1227 (1991). Substantial evidence is a quantum of evidence sufficient to persuade a rational, fair-minded person that the premise is true. *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 176, 4 P.3d 123 (2000).

As to Samuel's first contention, we disagree that the trial court abused its discretion by deciding not to include debts to Walter Miller in the property distribution. The court determined that Samuel's evidence was weak and not credible when it came to these two debts. The court noted the absence of contracts to support these debts. The court also noted that Samuel's February 2012 balance sheet was insufficient to support the debts because the balance sheet was prepared by Samuel for the bank and the bank was not associated with the loans.[3]

---

[3] Testimony of Sandra established that the values on the bank balance sheet are provided by the individual requesting the balance sheet. The banker does not know the values to include on the balance sheet until provided.

8

The court's findings on the Walter Miller debts are supported by substantial evidence. While Samuel's bank balance sheet lists two debts to Walter Miller as of February 2012, Samuel did not present contracts or account statements to support the amount owed. Also, Samuel's trial testimony regarding the Walter Miller obligations did not support the obligations because it was inconsistent and indecipherable at times. Samuel's testimony never refers to the February 2012 bank balance sheet to establish the debts to Walter Miller. Instead, he references a Walter Miller debt in discussion with his transactions with Mr. Summers. Samuel testified that he only owed one-half of an April 2011 loan from Walter Miller, although no evidence in the record before us on appeal listed the original loan amount as of that date or the lesser amount due. Next, he testified that he sold a large amount of ewes in early September 2011 and paid Walter Miller $66,000. Based on this sale, he testified the loan was reduced to $176,000 and that he owed one-half this amount, equaling $88,000. Neither of these amounts are consistent with the higher amount of $182,490 listed on the February 2012 bank balance sheet. Then, Samuel testified that Mr. Summers bought Samuel's sheep, taking over the $88,000 debt. Thus, Samuel contended that he no longer owed the debt to Walter Miller because Mr. Summers took over his obligation. Sandra was not questioned about the loans. Thus,

she provides no supporting testimony. For the smaller loan, there is no testimony in the record addressing this loan.

Given the inconsistent testimony, the trial court did not abuse its discretion when it found that the evidence of the debt was not credible. Sufficient evidence supports the trial court's decision to exclude the alleged Walter Miller debts from the property distribution.

As to Samuel's second contention, the trial court did address the community obligations owed by C&L Lockers and determined that no debt existed. The trial court listed the value of C&L as $0. This is supported by Samuel's closing statement that C&L Lockers did not have any value. The value is also supported by the testimony of Sandra. Sandra answered affirmatively when Samuel's counsel asked her if the net worth of C&L Lockers was zero when the company's liabilities were subtracted from its assets.

While Samuel presented a spreadsheet he created which listed five debts and their amounts, these debts were not listed on the C&L Lockers' company balance sheet as of September 11, 2011, even though the balance sheet contained the company's assets, liabilities, and equity. Furthermore, he did not substantiate these debts with receipts or other documentation. The trial court weighed the conflicting evidence and found that the

10

evidence and testimony for the C&L Lockers' debts listed on Samuel's spreadsheet was not credible.

The evidence at trial does not support Samuel's contentions on appeal. Samuel failed to substantiate the debts with documentation, although he had the ability and control over the documentation to do so. Equally, both the trial testimony and exhibits contain passing references to Walter Miller transactions that were never fully explained or summarized, although it is clear from the evidence, as discussed above, that the dealings with Walter Miller were a continuing phenomenon, and included both sales and purchases. There is simply no credible evidence in the record to corroborate Samuel's contentions. His testimony at trial was inconsistent and insufficient. Therefore, the trial court did not abuse its discretion when it refused to include the alleged debts in the property distribution. The property distribution was fair and equitable.

No. 31584-3-III
*In re Marriage of Hunt*

We affirm.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____
Korsmo, J.

_____
Fearing, J.